**A.J. FAIGIN, Plaintiff–Appellant,**

v.

**DOUBLEDAY DELL PUBLISHING GROUP, INC., Defendant– Appellee.**

No. 95–2702.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1995.

Decided Oct. 11, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 4, 1996.

Daniel M. Leep, McNally, Maloney & Peterson, Milwaukee, WI, Alan J. Mandel (argued), Chicago, IL, for Plaintiff-Appellant.

John R. Dawson, Lisa M. Arent (argued), Foley & Lardner, Milwaukee, WI, for Defendant-Appellee.

Before BAUER, ROVNER, and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Sports agent A.J. Faigin represented James E. Kelly, a quarterback for the National Football League's Buffalo Bills, from 1983 to 1987. Kelly spoke unfavorably of Faigin in an autobiography (ARMED AND DANGEROUS) that he co-wrote with sports writer Vic Carucci. Faigin filed a diversity suit against Kelly, Carucci, and the book's publisher, Doubleday Dell Publishing Group, Inc., claiming defamation and the intentional infliction of emotional distress. Faigin filed the suit first in the Northern District of Illinois, voluntarily dismissed it, and then re-filed in the Eastern District of Wisconsin. There the district court dismissed Kelly and Carucci for lack of personal jurisdiction, a ruling that Faigin does not challenge on appeal. The court also granted summary judgment in favor of Doubleday on the defamation claim, finding it to be untimely.[1] We disagree and reverse.

### I.

▪▪▪ Wisconsin has a two-year statute of limitations for libel actions, and Faigin's suit was filed within that two-year period; but the state also has a borrowing statute designed "to resolve conflicts between jurisdictions on statute of limitations questions." *McMahon v. Pennsylvania Life Ins. Co.*, 891 F.2d 1251, 1257 (7th Cir.1989). We, of course, look to such statutes in deciding which statute of limitations will govern a diversity case. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–98, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Wisconsin's statute provides:

(1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.

(2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

Wis.Stat. § 893.07. (Subsection (1) is the pertinent provision here, of course.) Wisconsin considers a cause of action "foreign" if the underlying injury occurred outside the state. *Guertin v. Harbour Assurance Co. of Bermuda, Ltd.*, 141 Wis.2d 622, 415 N.W.2d 831, 833–34 (1987); *Scott v. First State Ins. Co.*, 155 Wis.2d 608, 456 N.W.2d 152, 154 (1990).

"It is clear," the district court noted, "that Wisconsin is *a* place of the plaintiff's injury." *Faigin v. Kelly*, No. 94 C 616, Decision and Order at 16 (Feb. 6, 1995) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984)) (emphasis in original). At least forty-one copies of ARMED AND DANGEROUS were sold in Wisconsin, and Faigin has conducted some business within the state; Faigin's reputation, consequently, suffered harm within Wisconsin's borders. *Id.* Yet, "Faigin has alleged injury in other states as well." *Id.* And as Doubleday points out, the ties to Wisconsin are otherwise weak: Faigin lives in California, and Doubleday is a Delaware corporation with its principal place of business being New York. Kelly and Carucci live in New York and wrote ARMED AND DANGEROUS there. The book was printed outside of Wisconsin. Of all the copies Doubleday sold directly, less than two-tenths of one percent were sold to Wisconsin bookstores. Looking principally to the Wisconsin Supreme Court's decision in *Guertin* and the Eighth Circuit's decision in *Patch v. Playboy Enters., Inc.*, 652 F.2d 754 (8th Cir.1981) (per curiam) (applying Missouri's borrowing statute), the district court concluded that when the plaintiff's injury has occurred in more than one state, it amounts to a "foreign" cause of action governed by Wisconsin's borrowing statute, notwithstanding the fact that

---

**1.** Neither Doubleday, in moving for summary judgment, nor the district court, in granting Doubleday's motion, addressed the intentional infliction of emotional distress claim. That claim was subsequently dismissed pursuant to the parties' stipulation, and the district court clerk entered an amended judgment from which this appeal was taken. Two earlier appeals that Faigin had filed were then dismissed by order of this court.

Wisconsin is one of the states in which injury occurred. Decision and Order at 18. As a result, the district court found the case governed by the shortest statute of limitations among the states where the plaintiff was injured. *Id.* New York (whence the defendants hail), California (where Faigin lives), and Pennsylvania (the other state in addition to Wisconsin in which Faigin alleges he was injured) all have one-year statutes of limitations for libel. Because Faigin's suit was filed more than one year after his claim for defamation accrued, it was untimely.[2]

## II.

No Wisconsin court has yet considered whether a multistate defamation case in which at least some injury occurs within Wisconsin's borders constitutes a "foreign" cause of action for purposes of the state's borrowing statute. We must therefore do our best to predict what the Wisconsin Supreme Court would say if presented with this question. *Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1412 (7th Cir.) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994).

We do, of course, know how Wisconsin identifies a cause of action that is "foreign" for purposes of the borrowing statute. When the Wisconsin Judicial Council redrafted the borrowing statute in 1979, it understood the term "foreign cause of action" to be synonymous with the language of the former version of the statute, which spoke in terms of injuries "received without this state." This persuaded the Wisconsin Supreme Court that a cause of action is "foreign" if the underlying injury occurred outside the state. *Guertin,* 415 N.W.2d at 834 (approving *Johnson v. Deltadynamics, Inc.,* 813 F.2d 944, 945–46 (7th Cir.1987)). The court eschewed any consideration of whether the cause of action has significant contacts with Wisconsin, emphasizing that this familiar conflict-of-laws inquiry is appropriate only after the court has determined pursuant to the borrowing statute that the cause of action is timely. *Id. That* determination is governed by the place of injury. *Id.* at 834–35.

■ However tricky the "place of injury" test might be in other circumstances (*e.g., Johnson,* 813 F.2d at 946), it is straightforward enough here. As the district court recognized, the evidence certainly supports the conclusion that Faigin was injured in Wisconsin (assuming, of course, that ARMED AND DANGEROUS really did defame him); it also supports the conclusion that he was additionally injured in other states. This is a quirk of libel law: the plaintiff is generally considered to be injured wherever the defamatory writing is published. *Keeton,* 465 U.S. at 777, 104 S.Ct. at 1479. In other words, although it is clear where Faigin allegedly was injured, the place of injury cannot be narrowed to one state. What to do?

The district court thought that the Wisconsin courts would treat a multi-state defamation action as "foreign," despite the fact of the plaintiff's injury within Wisconsin borders, in part based on certain language in *Guertin.* Decision and Order at 18. Recall that section 893.07, which we quoted earlier, invokes the foreign limitations period for a foreign cause of action if that period has expired; but, if the foreign limitations period has not expired and the Wisconsin limitations period *has,* section 893.07(2) provides that it is the Wisconsin period which governs. This led the Wisconsin Supreme Court to remark in *Guertin:*

> The manifest intent of the legislature in enacting this borrowing statute was to adopt the shortest possible limitation period for actions litigated in this state potentially subject to more than one statute of limitations. The policies advanced by such a statute include the reduction of forum shopping, the prevention of stale claims, the expedient litigation of controverted matters, and the avoidance of uncertainty in assessing the timeliness of

---

2. Faigin claimed alternatively that even if a one-year statute of limitations applied, Doubleday was equitably estopped from relying on that period because it had misrepresented to Faigin the date that ARMED AND DANGEROUS was published. The district court found no evidence to support this argument. Our conclusion that Faigin's defamation claim is not a foreign cause of action and is therefore governed by Wisconsin's more generous two-year limitations period obviates any need to consider this alternate theory.

bringing an action in this state without the necessity of a court hearing to make such a determination, thereby preserving scarce judicial resources.

415 N.W.2d at 835 (emphasis supplied). The district court thought that the highlighted language spoke to the situation we confront in this case: a lawsuit stemming from injuries that occur in multiple states and thus is potentially subject to more than one statute of limitations. Decision and Order at 18. It is tempting to seize upon this language, we agree. But ultimately, nothing in *Guertin* really addresses this case. Any case, "foreign" or not, might be subject to more than one statute of limitations, and it was only foreign causes of action to which the court spoke in *Guertin*. Thus, however strongly *Guertin* confirms that Wisconsin wishes to apply the shortest possible statute of limitations for "foreign" causes of action, that recognized purpose begs the question whether a multistate defamation case *is* "foreign."

The district court also looked to the Eighth Circuit's decision in *Patch v. Playboy Enters., Inc., supra,* but the Missouri borrowing statute at issue in *Patch* differs in a key respect from Wisconsin's statute. The Missouri statute provides:

> Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it *originated,* said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

Mo.Rev.Stat. § 516.190 (emphasis supplied). The Eighth Circuit was thus called upon to decide where the plaintiff's libel claim had "originated" for purposes of the borrowing statute. The plaintiff was a Missouri resident, and presumably copies of PLAYBOY magazine, in which he allegedly was libeled, were circulated in Missouri. On the other hand, PLAYBOY had its principal place of business in Chicago, the magazine was edited, assembled, and printed there, and copies of the magazine were distributed to its readers from Chicago. Ultimately, the court concluded that the libel claim was subject to the Illinois limitations period, which had expired before Patch filed suit. The significance of the term "originates" to that decision is evi-

dent from the outset of the court's analysis. The court noted that Missouri courts, like most, had typically borrowed another state's limitations period when the injury occurred outside the state. 652 F.2d at 755–56. But in libel cases, the court pointed out, "the injury occurs, potentially, in many places at the same time." *Id.* at 756. "The place of injury rule does not answer whether the place of first injury, most injury, or any injury governs, and, for that reason, does not tell us where a cause of action for libel *originates*." *Id.* (emphasis supplied). The court acknowledged that there were plausible arguments to be made that Patch's libel claim might have originated in more than one place, including Missouri. *Id.* at 756–57. The underlying purpose of the borrowing statute—to prevent forum shopping—persuaded the court that these arguments were invalid. *Id.* But so too did the natural connotations of the words "origin" and "originate"—the "inception, beginning, and ultimate source"—connotations that clearly pointed in the direction of Illinois rather than Missouri. *Id.* at 756.

Wisconsin's statute, by contrast, lacks the equivalent of a term like "originates" that might enable us to single out one of the many states in which Faigin purportedly was injured and invoke that state's limitation period. Apparently without libel cases in mind, the Wisconsin legislature has given us no more guidance than the place of injury rule supplies, and as the Eighth Circuit pointed out in *Patch,* that rule "does not answer whether the place of first injury, most injury, or any injury governs." 652 F.2d at 756.

We are thus left with the argument that the antipathy to forum shopping reflected in Wisconsin's borrowing statute (in all such statutes, really) is best assuaged by labeling multi-state defamation cases "foreign." That might not seem such a bad result for this case, which by all accounts has little to do with Wisconsin. But given the ease with which libelous publications can and do cross state lines these days, a rule deeming all multi-state defamation cases foreign would have an extremely broad sweep. As a practical matter, any plaintiff libeled in a publication that is not truly intrastate would have to conduct a quick survey of the limitations

provisions of any state in which the libelous statement may have been published (and with the advent of the Internet, that might well include all fifty states) and file suit within the shortest of these limitations periods. Even the claim of a Wisconsin resident, libeled in a story written by a Wisconsin reporter and published in a Wisconsin newspaper would be labeled "foreign" so long as copies of the paper were circulated in at least one other state. To that extent, the Wisconsin statute of limitations for libel might well become a nullity.

At oral argument, Doubleday's counsel suggested that if ninety-nine percent of the plaintiff's injury occurred in Wisconsin, the result might be different. In a like vein, our dissenting colleague suggests that where, as here, it appears that nearly all of the plaintiff's injury occurred outside of Wisconsin, an exception to the rule we embrace should apply. But such proposals put each plaintiff in the uncomfortable position of having to predict how a court would assess the facts of her case. A plaintiff who waits to file suit in Wisconsin while the statutes of limitations of other states expire is then gambling, for if a court deems her cause of action "foreign" due to instances of publication outside the state, that is it, the courthouse door will be slammed shut, and there will be no arguing about how significantly the claim is related to Wisconsin. *Guertin,* 415 N.W.2d at 834–35. On the other hand, a plaintiff who rushes to court to avoid this possibility is surrendering the very benefit of additional time that Wisconsin meant to bestow on plaintiffs libeled within the state. Given the all-or-nothing consequences of the decision when to file suit, the outcome of the borrowing analysis must be one that can be known in advance (*see id.* at 835); "maybe" is of no use to anyone but the most indifferent plaintiff and the bravest (or most judgment proof) counsel.

Forced as we are, then, to decide between a rule that deems all multi-state libel claims foreign or all of them not, we think that the latter is the better of two imperfect choices, and the one that the Wisconsin Supreme Court would adopt. Admittedly, treating any libel claim as "domestic" so long as some publication occurred within Wisconsin allows for a great deal of forum shopping. Anyone libeled in a national publication, for example, can repair to Wisconsin if she misses the earlier cut-offs of other states. That is nothing new. *See Keeton,* 465 U.S. at 779, 104 S.Ct. at 1480. More importantly, Wisconsin, like any state, has at least some interest in redressing libel that occurs within the state. *Id.* at 776–77, 104 S.Ct. at 1479. As the Court noted in *Keeton,* "[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement." *Id.* at 776, 104 S.Ct. at 1479 (emphasis in original). That interest may be relatively weak here. None of the parties is a Wisconsin citizen, and arguably few if any such citizens were harmed by the alleged defamation of Faigin. But the rule that Doubleday proposes, and which the district court embraced, would apply even when Wisconsin's interest in rectifying the libel is of the strongest order, so long as there were some publication (however incidental or limited) beyond the boundaries of the state. We do not think the Wisconsin Supreme Court would wish to adopt a rule depriving the plaintiffs in those cases of the benefit of the state's more generous statute of limitations.

Wisconsin can, of course, shorten its limitations period if it fears that it will become to multi-state libel suits what Las Vegas is to weddings. But that is an action better accomplished by the legislature than by a judicially fashioned rule which treats all multi-state defamation cases as "foreign" for purposes of the borrowing statute. As it stands, the Wisconsin statute asks one question: did the injury occur inside Wisconsin? The answer here is yes, if not exclusively. That is enough, we are persuaded, to remove the case from the operation of the borrowing statute.

### III.

The judgment of the district court is RE-VERSED and the case is REMANDED for further proceedings consistent with this opinion.

TERENCE T. EVANS, *Circuit Judge,* dissenting.

Sports books are a dime for two dozen. Bookstores often have heaps of them, many

on tables marked "Sale, 50 percent off." "Armed and Dangerous," the autobiography of Buffalo Bills' quarterback Jim Kelly, is such a book. The record tells us that 41 copies of the book were sold to Wisconsin bookstores and 28,559 were sold to bookstores in other states, including 10,501 in New York, the state the Bills call home. Of the sales of "Armed and Dangerous," a staggering 99.86 percent occurred outside Wisconsin.

A.J. Faigin, one of Kelly's agents from 1983 to 1987, says in this suit that he was libeled on page 57 and pages 159–60 of "Armed and Dangerous." Here, in its entirety, is the claimed libelous allegation uttered by Kelly:

> I was in Akron, Ohio, where my agents at the time—Greg Lustig, A.J. Faigin and Weinberger—were based. (I wanted to use another word besides "agents" here, but that's better left for the lawsuit that is currently pending in Texas. My mother always said if you don't have anything good to say about somebody, don't say anything at all.)

> . . . .

> I learned my lesson the hard way about whom to trust and whom not to trust in business. I had had complete faith in my first agents, Greg Lustig and A.J. Faigin. Before signing with them out of college, I talked to a bunch of other players they represented and they all said Lustig and Faigin did a good job on their contracts. Even Jack Lambert, the former Steeler great, gave them a strong recommendation.

> Then Danny and the Trevino brothers started taking a closer look at my business affairs. And the more they looked, the more they didn't like what they found.

> Finally, I saw the light. In 1988, I fired Lustig and Faigin and put my brother and the Trevinos in charge of all my business dealings. Then I filed a major lawsuit against my former agents as well as the former owners of the Gamblers for defaulting on the payment of my signing bonus.

Fortunately, I was able to catch the problem before it was too late, which made me luckier than a lot of other pro athletes.

Personally, I doubt whether, in the brutal world of professional athletes and professional sports agents, the tepid passages about Faigin could be construed as defamatory. But we need not consider that question, for our task, as the majority correctly notes, is simply to predict whether a Wisconsin court would consider Faigin's claim to be a "foreign cause of action" under § 893.07(1), Wis. Stat. We must make a prediction because Wisconsin law controls, and its courts have not spoken on the issue. So the majority reads the sibylline leaves and predicts Wisconsin would say no. But I think the crystal ball is cloudy; the answer should be yes.

Wisconsin has absolutely no interest in this suit. And the suit, which actually is the reincarnation of a time-barred suit originally filed in Illinois, arrived in Wisconsin in a naked attempt to take advantage of a quirk in libel law that seems to regard a plaintiff, as the majority notes, as "generally considered to be injured wherever the defamatory writing is published," citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S.Ct. 1473, 1479–80, 79 L.Ed.2d 790 (1984). But *Keeton* involved "Hustler" magazine, which sold more than 10,000 copies of its publication in New Hampshire every month. On these facts, the Court noted, "There is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed." *Keeton*, 465 U.S. at 781, 104 S.Ct. at 1482. Faigin's case is different, and if the key word "generally" from *Keeton* (a person is "generally considered to be injured wherever the defamatory writing is published") means anything, it must allow for exceptions. As we recently noted, "generally" does not mean "always." *Roldan v. United States*, 96 F.3d 1013 (7th Cir.1996). This case presents a situation where an exception would make sense.

So we get to a prediction. I think the better one for us to make in this case is that Wisconsin would view Faigin's obvious forum shopping with disfavor. I think Wisconsin would closely examine the facts of this so-

called "multistate defamation lawsuit" to see if permitting it to go forward would frustrate the purpose of its borrowing statute, which is, of course, to discourage forum shopping. I think a Wisconsin court would be impressed by how different the facts here are from *Keeton*. I think a Wisconsin court would look to see if there was a reasonable chance that Faigin suffered a real, as opposed to merely a fictional "injury" in Wisconsin. While I surely can't say precisely at which point Wisconsin would be satisfied that, in the big picture, a libel plaintiff sustained an injury-in-fact in Wisconsin, I don't think that point would be reached after only 41 books were sold in the Badger state when 99.86 percent of the others were sold elsewhere. And this would be especially true in a case like this where Kelly and Carucci live in New York, Faigin resides in Marina Del Rey, California, Doubleday is a Delaware corporation with its principal place of business in New York, and the book was written, printed, published, and distributed from places outside Wisconsin. I would affirm the district court's decision to dismiss this suit.