STARK, P.J.
*242 ¶1 David and Kathryn Paynter sued Dr. James Hamp, alleging he negligently failed to diagnose David's cancer. The circuit court granted Hamp summary judgment. It concluded Wisconsin's borrowing statute, WIS. STAT . § 893.07 (2015-16),[1] applied *243 to the Paynters' lawsuit, and their claims were therefore subject to Michigan's statute of limitations for medical malpractice actions. Applying the Michigan statute of limitations, the court concluded the Paynters' lawsuit was not timely filed.
¶2 The circuit court applied an incorrect legal standard in determining the Paynters' lawsuit was subject to the borrowing statute. Nonetheless, we agree with the court's ultimate conclusion that their lawsuit was not timely filed.[2] The borrowing statute applies to actions brought in Wisconsin "on a foreign cause of action." See WIS. STAT . § 893.07(1), (2). A cause of action is foreign, for purposes of the borrowing statute, when it is premised on an injury that occurred outside of Wisconsin. See Guertin v. Harbour Assurance Co. of Bermuda , 141 Wis. 2d 622, 630, 415 N.W.2d 831 (1987). In a case-like this one-in which the plaintiff claims to have been injured in the same course of action in multiple states, we conclude the plaintiff's location at the time of his or her first injury controls whether the plaintiff's cause of action is "foreign."
¶3 Here, the Paynters have alleged a negligent misdiagnosis. Our supreme court *377 has previously held that, in such cases, an actionable injury occurs when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis. Paul v. Skemp , 2001 WI 42, ¶ 25, 242 Wis. 2d 507, 625 N.W.2d 860. In his summary judgment submissions, Hamp made a prima facie showing that all of David's injuries occurred in *244 Michigan. In response, the Paynters failed to submit sufficient evidence to raise a genuine issue of material fact as to whether David was located in Wisconsin when Hamp's allegedly negligent misdiagnosis first caused him greater harm than existed at the time of the misdiagnosis. As a result, the Paynters' lawsuit is a foreign cause of action and is therefore subject to the borrowing statute. Under the borrowing statute, the Paynters' lawsuit is untimely because it was not filed within the period set forth in Michigan's statute of limitations for medical malpractice claims. We therefore affirm the circuit court's judgment dismissing the Paynters' claims.[3]
BACKGROUND
¶4 David and his wife, Kathryn, live in Bessemer, Michigan, a city located near the Wisconsin-Michigan border. In April 2010, David saw Dr. Peter Areson, a Wisconsin physician, regarding a growth on his upper right neck. Areson referred David to Hamp, an ear, nose and throat specialist who practiced in both Ashland, Wisconsin, and Ironwood, Michigan.
¶5 David had an initial consultation at Hamp's Ironwood office on May 13, 2010. He returned to the Ironwood office on June 10, 2010, for a second appointment, during which Hamp performed an aspiration of *245 the growth on David's neck.[4] Hamp's staff transported the samples from David's growth to Ashland to be analyzed by a pathologist there.
¶6 Hamp received the pathologist's report on June 14, 2010. On the same day, he called the Paynters' home telephone in Michigan and told David that the growth was not cancerous and David did not need any further treatment.[5] However, David ultimately had surgery to remove the growth on June 19, 2014, and was diagnosed with cancer the same day. The doctor who performed the surgery requested that the pathology materials from that procedure be compared to the slides from the aspiration Hamp had performed in June 2010. The following week, that doctor informed David his cancer had been present in June 2010.
¶7 The Paynters mailed a request for mediation to Wisconsin's Medical Mediation Panels sometime during May 2015. On August 31, 2015, the Paynters filed the instant lawsuit against Hamp; his Michigan medical malpractice insurer, American *378 Physicians Assurance Company; and his Wisconsin medical malpractice insurer, ProAssurance Wisconsin Insurance Company.[6] The Paynters' complaint asserted both negligence *246 and informed consent claims against Hamp. It alleged that, as a result of Hamp's conduct, David had "sustained permanent injuries and damages, including past and future pain, suffering, disability, humiliation, embarrassment, worry and mental distress," as well as "loss of enjoyment of life; past wage loss and impairment of future earning capacity; past and future medical expenses; and other compensable injuries." The complaint further alleged that Kathryn had been "deprived of the society and companionship of her spouse, ha[d] provided nursing services, and ha[d] incurred medical and other expenses relating to her spouse's injuries, and will continue to incur such expenses in the future."
¶8 Hamp moved for summary judgment, arguing the Paynters' lawsuit was not timely filed. His motion was based on Wisconsin's borrowing statute, which provides:
(1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.
(2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.
WIS. STAT . § 893.07. Hamp contended the Paynters' lawsuit constituted a "foreign cause of action" under the borrowing statute because any injuries the *247 Paynters sustained as a result of his conduct occurred in Michigan-their state of residence-rather than Wisconsin. He therefore argued the Paynters' lawsuit was untimely because the "foreign period of limitation"-i.e., Michigan's statute of limitations for medical malpractice claims-had expired. See § 893.07(1) (providing no action may be maintained in Wisconsin on a foreign cause of action where the foreign limitation period has expired).
¶9 In response to Hamp's summary judgment motion, the Paynters did not dispute that their lawsuit was untimely under the Michigan statute of limitations. Instead, they argued there was a genuine issue of material fact as to whether the borrowing statute applied to their claims in the first place. In support of that argument, they contended a plaintiff's cause of action is not foreign, under the borrowing statute, if he or she sustained some injury in Wisconsin, even if the plaintiff was also injured in another state. The Paynters argued that, in the instant case, David's injury was the growth of his cancer during the time period between the June 2010 misdiagnosis and the June 2014 surgery to remove the tumor. David submitted an affidavit, in which he averred he was "frequently" in Wisconsin during that time period. The Paynters therefore argued there was at least a genuine issue of material fact as to whether David sustained an injury-namely, the growth of his cancer-while he was in Wisconsin.
¶10 The circuit court concluded the borrowing statute applied to the Paynters' claims. In reaching that conclusion, the court considered five factors that are traditionally used to resolve "choice of laws" questions: (1) predictability of results; (2)
*379 maintenance of interstate and international order; (3) simplification of *248 the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. See State Farm Mut. Auto. Ins. Co. v. Gillette , 2002 WI 31, ¶ 53, 251 Wis. 2d 561, 641 N.W.2d 662. The court concluded these factors favored applying Michigan's statute of limitations. The court further concluded the Paynters' lawsuit was untimely under the Michigan statute, and it therefore granted Hamp's motion for summary judgment. The Paynters now appeal.
STANDARD OF REVIEW
¶11 We independently review a grant of summary judgment, using the same methodology as the circuit court. Hardy v. Hoefferle , 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. "Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented." Preloznik v. City of Madison , 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). If so, we then examine the moving party's submissions to determine whether they establish a prima facie case for summary judgment. Id. If the moving party has made a prima facie showing, we examine the opposing party's affidavits to determine whether a genuine issue exists as to any material fact. Id. Ultimately, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT . § 802.08(2).
*249 ¶12 Here, our review of the circuit court's summary judgment decision also requires us to interpret and apply WIS. STAT . § 893.07. Statutory interpretation presents a question of law for our independent review. State v. Bergquist , 2002 WI App 39, ¶ 6, 250 Wis. 2d 792, 641 N.W.2d 179.
DISCUSSION
¶13 In the instant case, it is undisputed the Paynters' lawsuit was timely filed under Wisconsin's statute of limitations for medical malpractice claims. With certain exceptions not applicable here, that statute requires medical malpractice actions to be commenced within the later of: (1) three years from the date of injury; or (2) one year from the date the injury was discovered, or in the exercise of reasonable diligence should have been discovered, but not more than five years from the date of the act or omission giving rise to the injury. WIS. STAT . § 893.55(1m). Hamp concedes the Paynters first discovered David's injury on June 19, 2014, the date of his surgery and cancer diagnosis. It is undisputed that the Paynters mailed their request for mediation to the Wisconsin Medical Mediation Panels sometime during May 2015, which was within one year of June 19, 2014, and was not more than five years after the act giving rise to David's injury-i.e., the June 14, 2010 misdiagnosis. See WIS. STAT . § 655.44(4) (stating "any applicable statute of limitations" is tolled on the date a medical malpractice plaintiff mails his or her request for mediation). The Paynters' lawsuit was therefore timely under the discovery prong of the Wisconsin statute.
¶14 Conversely, the undisputed facts show that the Paynters' lawsuit was not timely under Michigan's statute of limitations for medical malpractice claims.
*250 That statute requires a plaintiff to file suit within the later of: (1) two years from the date his or her claim accrued-that is, the date of the negligent act or omission; or (2) six *380 months after the plaintiff discovered or should have discovered the existence of his or her claim. MICH. COMP. LAWS ANN . § 600.5805(1), (6), § 600.5838a(1), (2) (West 2018). Again, it is undisputed that the Paynters mailed their mediation request in May 2015, which was more than two years after the June 14, 2010 misdiagnosis-the negligent act giving rise to their claim. It is further undisputed that the Paynters discovered or should have discovered the existence of their claim on June 19, 2014, but they did not mail their mediation request within six months of that date.
¶15 Consequently, the only issue on appeal is whether the borrowing statute applies to the Paynters' lawsuit, such that the timeliness of their claims is governed by the Michigan statute of limitations, rather than the Wisconsin statute. As noted above, we agree with the circuit court's ultimate conclusion that the borrowing statute applies to the Paynters' lawsuit, but we disagree with the court's reasoning. The court used a "choice of laws" analysis when determining whether to apply the borrowing statute. However, as both sides conceded at oral argument, that approach was directly contrary to our supreme court's decision in Guertin .
¶16 The plaintiff in Guertin "was injured in the state of Illinois when he slipped and fell off a fuel tank of a semi-tractor he was employed to drive." Guertin , 141 Wis. 2d at 625, 415 N.W.2d 831. Over two and one-half years later, he filed suit in Wisconsin state court against multiple defendants. Id. The defendants argued the plaintiff's lawsuit was untimely because, pursuant to the borrowing *251 statute, Illinois' two-year statute of limitations for personal injury actions applied. Id. at 625-26, 415 N.W.2d 831.
¶17 In order to determine whether the borrowing statute applied to the plaintiff's claims, our supreme court considered whether those claims constituted a "foreign cause of action." Id. at 626, 415 N.W.2d 831. The court noted that phrase "was not used by the legislature prior to the enactment of sec. 893.07, Stats., and is not expressly defined in that statute." Id. at 628, 415 N.W.2d 831. The court then concluded the phrase was ambiguous, explaining, "We find this phrase may reasonably convey two different meanings. A 'foreign cause of action' might be one which exists because of significant contacts with another jurisdiction. It may also describe any action where injury arises outside the forum state." Id.
¶18 Accordingly, the court looked to legislative history to determine the meaning of the phrase "foreign cause of action." Id. at 628-29, 415 N.W.2d 831. The court noted a previous version of the borrowing statute had applied to actions to recover damages "for injuries to the person, received without this state." Id. at 629, 415 N.W.2d 831 (quoting WIS. STAT . § 893.205(1) (1977-78) ) (emphasis omitted). Based on a Wisconsin Judicial Council Committee note, the court concluded the legislature intended the phrase "foreign cause of action" to be synonymous with an action to recover damages "for injuries to the person, received without this state"-that is, a cause of action premised on injuries sustained outside Wisconsin. Id. at 629-30, 415 N.W.2d 831. The court further concluded a choice of laws analysis-including the five "choice-influencing considerations" the circuit court applied in this case-is only relevant "[o]nce a claim is properly before the court under [the borrowing statute] and an outcome-determining conflict exists between laws of two or more interested jurisdictions." Id. at 630-31, 415 N.W.2d 831.
*252 ¶19 Guertin makes it clear that choice of laws considerations are not relevant *381 to determining whether the borrowing statute applies to a particular lawsuit. Instead, a court must consider whether that lawsuit constitutes a "foreign cause of action"-in other words, a cause of action premised on an injury that occurred outside of Wisconsin. Id. at 630, 415 N.W.2d 831. The operative question in this case is therefore whether David's "injury," for purposes of the borrowing statute, occurred outside of this state.
¶20 The Paynters argue David's injury is the extent to which his cancer grew or spread between the June 2010 misdiagnosis and the June 2014 surgery to remove the tumor. The Paynters contend Hamp "admitted" during his deposition that David's tumor would have continued to grow or expand until surgically removed. They further allege there is evidence in the record indicating that, although the Paynters live in Michigan, David was "frequently" in Wisconsin between 2010 and 2014. On this record, the Paynters argue there is "at the very least" a question of fact as to whether David's injury occurred "in part" in Wisconsin. The Paynters contend that, as long as some portion of David's injury occurred in Wisconsin, their lawsuit does not qualify as a "foreign cause of action" under the borrowing statute.
¶21 The Paynters' argument in this regard rests almost entirely on Faigin v. Doubleday Dell Publishing Group, Inc. , 98 F.3d 268 (7th Cir. 1996), a federal case interpreting Wisconsin law. In Faigin , a sports agent filed a federal lawsuit in the United States District Court for the Eastern District of Wisconsin against one of his former clients, alleging the client's autobiography had defamed him. Id. at 269.
*253 The question on appeal was whether the defamation claim constituted a "foreign cause of action," such that Wisconsin's borrowing statute applied to the plaintiff's lawsuit. Id. at 269-70.
¶22 The United States Court of Appeals for the Seventh Circuit concluded the plaintiff's claim was not a foreign cause of action. The court began by citing Guertin for the proposition that "a cause of action is 'foreign' if the underlying injury occurred outside the state." Faigin , 98 F.3d at 270 (citing Guertin , 141 Wis. 2d at 630, 415 N.W.2d 831 ). The court then noted that, pursuant to a "quirk of libel law," a plaintiff alleging defamation "is generally considered to be injured wherever the defamatory writing is published." Id. at 270 (citing Keeton v. Hustler Magazine, Inc. , 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ). The evidence in Faigin showed that at least forty-one copies of the allegedly defamatory autobiography had been sold in Wisconsin, id. at 269, although the vast majority of the book's sales took place in other states, id. at 274 (Evans, J., dissenting). The court concluded, "As it stands, the Wisconsin statute asks one question: did the injury occur inside Wisconsin? The answer here is yes, if not exclusively. That is enough, we are persuaded, to remove the case from the operation of the borrowing statute." Id. at 272.
¶23 Based on Faigin , the Paynters argue a cause of action is not "foreign," for purposes of the borrowing statute, as long as the plaintiff sustained some injury in Wisconsin, even if the plaintiff was also injured in other states. They therefore contend that, if David's cancer grew at any point while he was in Wisconsin between June 2010 and June 2014, that growth was an injury in Wisconsin and, as a result, the Paynters' lawsuit is not a foreign cause of action under the borrowing statute.
*254 ¶24 We do not find this argument convincing. As Hamp correctly notes, Faigin *382 is not binding authority.[7] See Rogers ex rel. Rogers v. Saunders , 2008 WI App 53, ¶ 19 n.9, 309 Wis. 2d 238, 750 N.W.2d 477. Although we may rely on federal decisions to the extent we find them persuasive, see, e.g. , Doe 56 v. Mayo Clinic Health Sys.-Eau Claire Clinic, Inc. , 2016 WI 48, ¶ 18 n.10, 369 Wis. 2d 351, 880 N.W.2d 681, we conclude for three reasons that Faigin 's holding is not applicable here.
¶25 First, Faigin is inapt because its holding appears to be limited to the context of multistate defamation actions. The Faigin court conceded its reasoning rested on a "quirk" of defamation law-i.e., that a plaintiff is generally considered to have been injured wherever the defamatory writing was published. See Faigin , 98 F.3d at 270. Moreover, the court expressly framed the issue before it as whether "a multistate defamation case in which at least some *255 injury occurs within Wisconsin's borders constitutes a 'foreign' cause of action" for purposes of the borrowing statute. Id. at 270 (emphasis added). Thereafter, when announcing its holding, the court stated, "Forced as we are, then, to decide between a rule that deems all multi-state libel claims foreign or all of them not , we think that the latter is the better of two imperfect choices, and the one that the Wisconsin Supreme Court would adopt." Id. at 272 (emphasis added). These excerpts strongly suggest that the Faigin court did not intend its holding to apply outside the context of multistate defamation cases.[8]
¶26 Second, even if Faigin could, as a general matter, be applied in contexts other than multistate defamation actions, an important factual dissimilarity precludes its application here. Specifically, Faigin involved *256 multiple, discrete injuries in different states. Here, in contrast, the Paynters have asserted a single, continuous injury, *383 which they allege was ongoing for the entire period between June 2010 and June 2014, during which time David was physically present in both Michigan and Wisconsin. The Paynters have not developed a convincing argument or cited any legal authority indicating that Faigin 's holding should apply to this type of "continuous" injury.
¶27 Third, applying Faigin in this case would be contrary to two of the purposes of WIS. STAT . § 893.07. Our supreme court has explained that, in enacting the borrowing statute, the legislature intended
to adopt the shortest possible limitation period for actions litigated in this state potentially subject to more than one statute of limitations. The policies advanced by such a statute include the reduction of forum shopping, the prevention of stale claims, the expedient litigation of controverted matters, and the avoidance of uncertainty in assessing the timeliness of bringing an action in this state without the necessity of a court hearing to make such a determination, thereby preserving scarce judicial resources.
Guertin , 141 Wis. 2d at 631-32, 415 N.W.2d 831. Permitting a plaintiff to file suit in Wisconsin as long as he or she sustained some injury in this state-even if that injury was minimal and the plaintiff suffered far greater injuries in another state-would subvert the borrowing statute's goals of reducing forum shopping and encouraging the expedient litigation of controverted matters.[9]
*257 ¶28 For all of these reasons, we reject the Paynters' invitation to hold, based on Faigin , that their lawsuit is not a foreign cause of action as long as David sustained some injury in Wisconsin, even if he was also injured in Michigan. Having rejected that argument, however, we must select an alternative framework for determining whether the Paynters' lawsuit constitutes a foreign cause of action. The Faigin court identified two such possible alternatives: (1) that a cause of action is not foreign if the plaintiff's first injury occurred in Wisconsin; and (2) that a cause of action is not foreign if most of the plaintiff's injury occurred in Wisconsin. See Faigin , 98 F.3d at 271 (citing Patch v. Playboy Enters., Inc. , 652 F.2d 754, 756 (8th Cir. 1981) ). We conclude the first of these alternatives provides a more workable solution.
¶29 Our supreme court has indicated that it favors establishing bright-line rules when interpreting and applying the borrowing statute. See Abraham v. General Cas. Co. of Wis. , 217 Wis. 2d 294, 306-07, 576 N.W.2d 46 (1998). Such bright-line rules promote one of the borrowing statute's purposes-"the avoidance of *258 uncertainty in assessing the timeliness of bringing an action in this state without the necessity of a court hearing to make such a determination, thereby preserving scarce judicial resources." Guertin , 141 Wis. 2d at 631-32, 415 N.W.2d 831. If we were to *384 conclude that a cause of action is not foreign when most of the plaintiff's injuries occurred in Wisconsin, circuit courts would be required to make fact-specific, case-by-case determinations regarding where the majority of each individual plaintiff's injuries occurred. As the Faigin court noted, such a result would "put each plaintiff in the uncomfortable position of having to predict how a court would assess the facts of her [or his] case." Faigin , 98 F.3d at 272. We agree with the Faigin court that, "[g]iven the all-or-nothing consequences of the decision when to file suit, the outcome of the borrowing analysis must be one that can be known in advance." Id. We therefore conclude that, in cases involving an injury or injuries that allegedly occurred in multiple states, the plaintiff's cause of action is not foreign, for purposes of the borrowing statute, when the first instance of injury occurred in Wisconsin.
¶30 As a result, determining where David was located at the time he was first injured by Hamp's misdiagnosis necessarily requires an initial determination of when that injury occurred. Our supreme court's decision in Paul governs that issue. In Paul , the plaintiffs' daughter died following the rupture of an arteriovenous malformation, which the defendant physician had failed to diagnose. Paul , 242 Wis. 2d 507, ¶¶ 3-5, 625 N.W.2d 860. The issue on appeal was whether the plaintiffs had timely filed their medical malpractice lawsuit, which alleged the physician's misdiagnosis caused their daughter's death. Id. , ¶¶ 6-7. The physician argued the plaintiffs' lawsuit was untimely under *259 WIS. STAT. § 893.55(1)(a) (1995-96), because it was filed more than three years after the patient's injury, which the physician alleged was the misdiagnosis. Paul , 242 Wis. 2d 507, ¶¶ 11-12, 625 N.W.2d 860.
¶31 Our supreme court rejected the physician's argument, explaining a misdiagnosis "in and of itself, is not, and cannot, be an actionable injury." Id. , ¶ 25. The court instead concluded that, in a medical malpractice case involving a negligent misdiagnosis, "[t]he actionable injury arises when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis." Id. The court later reiterated that, "until the misdiagnosis results in a harm that would not have occurred but for the misdiagnosis, there is no injury to trigger the running of the statute of limitations." Id. , ¶ 38.
¶32 Based on Paul , we conclude David first sustained an injury as a result of Hamp's conduct at the point in time when the misdiagnosis "cause[d] a greater harm than existed at the time of the misdiagnosis." See id. , ¶ 25. The relevant issue, for purposes of the borrowing statute, is therefore where David was located at the time that first instance of greater harm occurred.[10] If David was located outside Wisconsin at that time, the Paynters' lawsuit would constitute a *260 "foreign cause of action" and, pursuant to the borrowing statute, Michigan's statute of limitations would apply to the Paynters' claims.
¶33 With the above framework in mind, we now turn to the parties' summary judgment submissions to determine whether Hamp was, in fact, entitled to summary judgment based on the borrowing statute.
*385 It is undisputed that the Paynters' complaint stated a cognizable claim, and that Hamp's answer joined issue. See Preloznik , 113 Wis. 2d at 116, 334 N.W.2d 580. We therefore proceed to the second step of the summary judgment analysis and consider whether Hamp established a prima facie case for summary judgment. See id.
¶34 "A prima facie case is established ... when evidentiary facts are stated which[,] if they remain uncontradicted by the opposing party's affidavits[,] resolve all factual issues in the moving party's favor." Walter Kassuba, Inc. v. Bauch , 38 Wis. 2d 648, 655, 158 N.W.2d 387 (1968). Here, in support of his summary judgment motion, Hamp relied on David's deposition testimony that the Paynters live in Bessemer, Michigan. Based on that testimony, Hamp argued it was undisputed that the Paynters "resided continuously and exclusively in the state of Michigan" during "the entirety of the time period spanning June 2010 to June 2014." Hamp therefore argued that, to the extent David was injured as a result of Hamp's conduct, that injury must have occurred within the state of Michigan.
¶35 We conclude Hamp sufficiently established a prima facie case for summary judgment. Hamp presented evidence showing that the Paynters lived in Michigan at the time of David's deposition. In addition, other evidence in the record at the time Hamp moved for summary judgment demonstrated that David received *261 the June 14, 2010 phone call on his "home phone" at a telephone number with a Michigan area code. At the time Hamp moved for summary judgment, there was no evidence in the record indicating the Paynters had lived anywhere else during the period from the misdiagnosis until its discovery, and the only reasonable inference was therefore that the Paynters continuously resided in Michigan during that time period. Moreover, there was no evidence in the record indicating that the Paynters were present in Wisconsin at any point during the relevant time period. If uncontradicted, these facts would establish that, regardless of the precise date David's injury occurred, he was not injured in Wisconsin. Hamp therefore made a prima facie showing that the Paynters' cause of action was foreign and, as such, was subject to the borrowing statute.
¶36 In response to Hamp's summary judgment motion, the Paynters failed to submit sufficient evidence to create a genuine issue of material fact as to whether David was first injured in Wisconsin. "A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Strasser v. Transtech Mobile Fleet Serv., Inc. , 2000 WI 87, ¶ 32, 236 Wis. 2d 435, 613 N.W.2d 142. Here, the Paynters argue the summary judgment record established that: (1) David was "frequently" in Wisconsin between the June 2010 misdiagnosis and the June 2014 surgery to remove his tumor; and (2) Hamp "admitted" during his deposition that David's tumor would have continued to grow or expand until surgically removed.[11] This evidence does not *262 establish- *386 or even suggest-at what point in time David first experienced a greater harm than that which existed at the time of the misdiagnosis. Without evidence as to when that first instance of greater harm occurred, merely asserting that David was "frequently" in Wisconsin during the time between the misdiagnosis and the ultimate removal of his tumor is insufficient to support a reasonable inference that he was injured, for purposes of the borrowing statute, while in Wisconsin.[12] *263 ¶37 At oral argument, the Paynters contended that, even if they failed to raise a genuine issue of material fact as to whether David was first injured in Wisconsin, the proper procedure would be for this court to remand the matter to the circuit court to allow the Paynters to present evidence related to that issue. The Paynters' position appears to be that, prior to our opinion in this case, they could not have anticipated that whether a cause of action was "foreign" under the borrowing statute would depend upon whether the first instance of injury occurred outside of Wisconsin. We disagree. Paul was decided in 2001, years before the Paynters filed the instant lawsuit. The Paynters should have anticipated that, if either the circuit court or this court rejected their Faigin argument-i.e., that a cause of action is not foreign as long as some injury occurred inside Wisconsin-we would then look to Paul to determine when, and consequently where, their cause of action accrued. The Paynters had the opportunity to address that issue with their prior summary judgment submissions. Under these circumstances, we decline the Paynters' request that we give them a second chance to present evidence related to that issue.
¶38 The Paynters also argue that, even if they failed to produce evidence supporting a reasonable inference that David sustained a physical injury in Wisconsin for purposes of the borrowing statute, their informed consent claim is nevertheless viable. They *264 allege Hamp violated his duty of informed consent by misdiagnosing David on June 14, 2010, in that the misdiagnosis deprived David "of the opportunity to choose his course of treatment." The Paynters contend this violation constituted an injury-distinct from any physical injury David may have sustained-because the term "injury" encompasses the violation of a person's legal rights. See Liebovich v. Minnesota Ins. Co. , 2008 WI 75, ¶ 38, 310 Wis. 2d 751, 751 N.W.2d 764 (citing Injury , BLACK'S LAW DICTIONARY *387 (8th ed. 2004) ). They further argue this injury occurred in Wisconsin because Hamp was physically present in Wisconsin when he called David on June 14, 2010, and communicated the misdiagnosis. They therefore argue David's informed consent claim is not a foreign cause of action and, as such, the borrowing statute does not apply to it.
¶39 We disagree. We have already concluded that an injury occurs, for purposes of the borrowing statute, at the first moment in time when the plaintiff sustains an injury. Here, the Paynters have conceded Hamp first violated David's right to informed consent during the June 14, 2010 phone call. It is undisputed that David was located in Michigan when he received that call. Because David was located in Michigan at that time, his alleged injury-i.e., the loss of the opportunity to choose his course of treatment-occurred in Michigan, not Wisconsin. David's informed consent claim therefore constitutes a foreign cause of action.
¶40 Studio & Partners, s.r.l. v. KI , No. 06-C-628, 2007 WL 3342597 (E.D. Wis. Nov. 7, 2007), supports this conclusion. In that case, an Italian company (S & P) filed a federal lawsuit against KI (a Wisconsin *265 corporation) in the Eastern District of Wisconsin, alleging KI had misappropriated S & P's design for a chair. Id. at *1. KI argued Wisconsin's borrowing statute applied, and Italy's five-year statute of limitations therefore barred S & P's claims. Id. at *2. In response, S & P contended that, because each of KI's allegedly tortious acts occurred in Wisconsin, S & P necessarily sustained an injury within this state. Id. at *3. The district court rejected S & P's argument, noting the relevant question, for purposes of the borrowing statute, is where an injury to the plaintiff occurred, not where the events that caused the injury occurred. Id. In other words, "the injury occurs where it is felt rather than where it originates." Id. The court concluded the only injury to S & P occurred in Italy because "S & P became poorer (if at all) in Italy, not Wisconsin." Id.
¶41 The Paynters rely on Abraham in support of their argument that the injury David sustained as a result of Hamp's informed consent violation occurred in Wisconsin, where Hamp was located, rather than in Michigan, where David was located. The issue in Abraham was "how to apply WIS. STAT . § 893.07 to cases in which the underlying cause of action sounds in contract," rather than tort. Abraham , 217 Wis. 2d at 300, 576 N.W.2d 46. The court concluded a contract claim constitutes a foreign cause of action when "the final significant event giving rise to a suable claim occurs outside the state of Wisconsin." Id. at 311, 576 N.W.2d 46. The court further concluded that, in the case before it, the final significant event giving rise to the plaintiff's claim was the defendant insurer's breach of contract-i.e., its denial of underinsured motorist benefits-which "occurred in Wisconsin." Id. at 312, 576 N.W.2d 46. The court therefore held the plaintiff's claim was not a foreign cause of action under the borrowing statute. Id. at 313, 576 N.W.2d 46.
*266 ¶42 The Paynters note that, in Abraham , the defendant insurer's "conveyance" of its decision to deny the plaintiff's claim "occurred in Wisconsin." See id. at 314, 576 N.W.2d 46 (Bradley, J., concurring). They therefore argue that, because Hamp made the call to David conveying the incorrect diagnosis from Wisconsin, Abraham dictates that the Paynters' informed consent claim is not a foreign cause of action. In Abraham , however, both the insurer and the plaintiff were located in Wisconsin. See id. Thus, the Abraham court did not need to-and did not-address where an injury *388 occurs when a party in one state communicates information to a party in another state. Abraham therefore does not support the Paynters' argument that, because Hamp was in Wisconsin when he conveyed the misdiagnosis to David, David's injury for purposes of his informed consent claim occurred in Wisconsin.
CONCLUSION
¶43 In summary, we conclude that, in assessing where a plaintiff's injury occurred for purposes of the borrowing statute, the operative question is where the plaintiff was located when he or she first sustained an injury as a result of the defendant's conduct. In a medical malpractice case alleging a negligent misdiagnosis, the initial injury occurs at the first point in time when the misdiagnosis causes a greater harm than that which existed at the time of the misdiagnosis. Here, Hamp submitted sufficient evidence to make a prima facie showing that David's initial injury did not occur in Wisconsin. In response, the Paynters failed to raise a genuine issue of material fact on that issue. While the Paynters argue Hamp's violation of David's right to informed consent constituted a separate injury *267 for purposes of the borrowing statute, the summary judgment record conclusively establishes that injury occurred in Michigan.
¶44 For these reasons, we conclude the Paynters' lawsuit constitutes a foreign cause of action and is therefore subject to the borrowing statute. Under the borrowing statute, the Michigan statute of limitations governs the timeliness of the Paynters' claims. As explained above, the Paynters claims are clearly untimely under the Michigan statute. Accordingly, the circuit court properly granted Hamp summary judgment.[13]
By the Court.-Judgment affirmed.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

We may affirm a circuit court's decision if it reached the right result for the wrong reason. See State v. Holt , 128 Wis. 2d 110, 124, 382 N.W.2d 679 (Ct. App. 1985), superseded by statute on other grounds .

The Paynters also argue the circuit court erred by determining an insurance policy that ProAssurance Wisconsin Insurance Company issued to Hamp did not provide coverage for the Paynters' claims. Because we conclude the circuit court properly dismissed the Paynters' claims on other grounds, we need not address the Paynters' insurance coverage argument. See Turner v. Taylor , 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

In this context, the term "aspiration" refers to the "[w]ithdrawal of fluid from a cavity by suctioning off with an aspirator" for the purpose of "obtain[ing] specimens." Aspiration , Taber's Cyclopedic Medical Dictionary (19th ed. 2001).

The Paynters contend Hamp made the June 14, 2010 call from his Ashland office. However, the portions of the record that they cite in support of that assertion do not indicate where Hamp was located when he made that call. Nonetheless, Hamp and ProAssurance do not appear to dispute that Hamp made the June 14 call from Wisconsin.

The Paynters' complaint also named two other physicians and their respective insurers as defendants. However, the Paynters ultimately stipulated to the dismissal of their claims against one of those physicians and his insurer, and they did not oppose the other physician's motion for summary judgment, which the circuit court ultimately granted.

The Paynters have not cited, and we have not located, any Wisconsin case applying or adopting the Seventh Circuit's holding in Faigin v. Doubleday Dell Publishing Group, Inc. , 98 F.3d 268 (7th Cir. 1996). Although the Paynters assert our supreme court cited Faigin with approval in Wenke v. Gehl Co. , 2004 WI 103, 274 Wis. 2d 220, 682 N.W.2d 405, that assertion is somewhat misleading. Wenke cited both Faigin and Guertin v. Harbour Assurance Co. of Bermuda , 141 Wis. 2d 622, 415 N.W.2d 831 (1987), for the general proposition that, "[i]n the context of tort claims, the term 'foreign cause of action' refers to claims that are premised on injuries sustained outside of Wisconsin." Wenke , 274 Wis. 2d 220, ¶ 14, 682 N.W.2d 405. Wenke then addressed whether the borrowing statute "operates differently when the applicable foreign limitation period is one of repose rather than limitation." Id. , ¶ 15. The Wenke court was not required to interpret and apply the borrowing statute under circumstances in which the plaintiff was allegedly injured in multiple states.

The Eastern District of Wisconsin has distinguished Faigin on this basis, stating Faigin 's holding was "compelled by a 'quirk' of state libel law which deemed injury to occur in any state in which the offending material was published." Studio & Partners, s.r.l. v. KI , No. 06-C-628, 2007 WL 3342597, at *3 (E.D. Wis. Nov. 7, 2007).
The Paynters argue the Eastern District applied Faigin in the medical malpractice context in Stupak v. Hoffman-La Roche, Inc. , 315 F.Supp.2d 970 (E.D. Wis. 2004). However, we are not convinced the Stupak court intended to extend Faigin 's holding to medical malpractice cases. It seems equally likely that, when the Stupak court cited Faigin , it was simply summarizing the plaintiff's argument, rather than affirmatively holding that Faigin applied in the case before it. See Stupak , 315 F.Supp.2d at 975. Nothing in Stupak indicates that the parties briefed the issue of Faigin 's applicability to medical malpractice cases. Moreover, the Stupak court ultimately rejected the plaintiff's argument based on Faigin , on the grounds that the evidence indisputably showed the plaintiff in that case was not injured in Wisconsin. For that reason, the court did not need to address whether Faigin was, in fact, applicable to the plaintiff's claims.

Moreover, as the Studio & Partners court noted, plaintiffs will frequently be able to "concoct some negligible or inchoate injury occurring in Wisconsin that would render the injury non-foreign" under Faigin . See Studio & Partners , 2007 WL 3342597, at *3 n.3. Suppose, for instance, that David had visited Wisconsin for one day between June 2010 and June 2014-the period during which his cancer was allegedly growing as a result of the misdiagnosis. Under the Paynters' theory, the growth of David's cancer in Wisconsin on that single day would be sufficient to constitute an "injury" in Wisconsin, such that the borrowing statute would not apply to the Paynters' claims. The Paynters would therefore be able to benefit from Wisconsin's longer statute of limitations for medical malpractice actions, even if the Michigan statute of limitations had already expired. This appears to be an absurd result-and one that would promote, rather than reduce, forum shopping.

The Paynters argue Paul v. Skemp , 2001 WI 42, 242 Wis. 2d 507, 625 N.W.2d 860, is inapposite because it addressed when the patient's injury occurred, for purposes of the statute of limitations, rather than where the patient's injury occurred, for purposes of the borrowing statute. We do not find this distinction persuasive. It is self-evident that, in order to determine where David was located at the time he was injured as a result of Hamp's conduct, we must first determine when that injury occurred. Paul directly addresses that issue.

The Paynters cite two excerpts from Hamp's deposition testimony in support of their claim that Hamp "admitted" David's tumor would have continued to grow or expand until it was surgically removed. In the first excerpt, the Paynters' attorney stated:
[O]ne of the things that we allege in this suit is that had Mr. Paynter been told in 2010 that he had a malignancy and had received prompt treatment [for] that malignancy that his condition today would be much improved from his actual condition. Do you have any opinions with respect to whether or not Mr. Paynter's condition is worse due to the delay?
Hamp responded, "His survival and prognosis would be improved if he had been treated in 2010 versus 2014."
In the second excerpt, Hamp testified he would have recommended that David have the growth on his neck removed, regardless of whether it was malignant. Hamp subsequently explained that, even if the pathology report indicated no malignant cells were present, he would have told David "[i]f we don't take it out, it's going to continue to expand, and get to the point it will break down."
We are not convinced these excerpts constitute an admission that David's tumor would have continued to grow or expand until surgically removed. Regardless, even construing Hamp's deposition testimony as admitting that fact, we conclude the Paynters have failed to show a genuine issue of material fact as to whether David was first injured in Wisconsin, for purposes of the borrowing statute.

At oral argument, the Paynters contended the microscopic growth of David's tumor, in and of itself, was an injury for purposes of the borrowing statute. We are not convinced that is the case. It is not self-evident that the tumor's microscopic growth, without more, caused David greater harm than that which existed at the time of the misdiagnosis. Nonetheless, even assuming the microscopic growth of David's tumor could constitute an injury under the borrowing statute, nothing in the record indicates at what point in time following the misdiagnosis the first instance of that microscopic growth occurred.

As noted above, in addition to asserting negligence and informed consent claims on David's behalf, the Paynters' complaint asserted derivative claims on Kathryn's behalf. The Paynters conceded at oral argument that the viability of Kathryn's derivative claims depends on the viability of David's claims. Based on that concession, and because we conclude David's claims were untimely, we conclude the circuit court properly granted Hamp summary judgment on Kathryn's claims.