# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP739 |
| COMPLETE TITLE: | David W. Paynter and Kathryn M. Paynter, |
| |       Plaintiffs-Appellants-Petitioners, |
| |     v. |
| | ProAssurance Wisconsin Insurance Company, James A. Hamp and American Physicians Assurance Corporation, |
| |       Defendants-Respondents, |
| | Continental Casualty Company, Wisconsin Injured Patients and Families Compensation Fund, Keith A. Henry and Blue Cross Blue Shield of Michigan, |
| |       Defendants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 381 Wis. 2d 239,911 N.W.2d374
PDC No:2018 WI app 27 - Published

| | |
|---|---|
| OPINION FILED: | June 7, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 1, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Ashland |
|   JUDGE: | Robert E. Eaton |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | A.W. BRADLEY, J. concurs and dissents (opinion filed). |
| | R.G. BRADLEY, J. concurs and dissents, joined by KELLY, J. (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiffs-appellants-petitioners, there were briefs filed by *D. James Weis*, *Susan R. Tyndall*, and *Habush Habush & Rottier S.C.*, Waukesha. There was an oral argument by *Eric J. Ryberg*.

    For the defendants-respondents (James A. Hamp, M.D., and American Physicians Assurance Corporation), there was a brief

filed by *Jason J. Franckowiak*, *Lori Gendelman*, *and Otjen, Gendelman, Zitzer, Johnson & Weir, S.C.*, Waukesha. There was an oral argument by *Jason J. Franckowiak*.

For the defendants-respondents (Proassurance Wisconsin Insurance Company), there was a brief filed by *Mark E. Larson*, *Bradley S. Foley*, and *Gutglass, Erickson, Bonville & Larson, S.C.*, Milwaukee. There was an oral argument by *Mark E. Larson.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP739
(L.C. No. 2015CV80)

STATE OF WISCONSIN : IN SUPREME COURT

David W. Paynter and Kathryn M. Paynter,

      Plaintiffs-Appellants-Petitioners,

   v.

ProAssurance Wisconsin Insurance Company, James A. Hamp and American Physicians Assurance Corporation,

      Defendants-Respondents,

Continental Casualty Company, Wisconsin Injured Patients and Families Compensation Fund, Keith A. Henry and Blue Cross Blue Shield of Michigan,

      Defendants.

**FILED**

**JUN 7, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part, and cause remanded.*

¶1 SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals affirming an order of the Circuit Court for Ashland County, Robert E. Eaton, Judge,

granting summary judgment in favor of Defendant-Respondent Dr. James A. Hamp.

¶2 Plaintiffs-Appellants-Petitioners David and Kathryn Paynter live in Bessemer, Michigan, a city located near the Wisconsin-Michigan border. The Paynters sued Dr. Hamp, a medical doctor who practiced in both Wisconsin and Michigan, alleging that he negligently failed to diagnose Mr. Paynter with cancer. The Paynters also allege that Dr. Hamp violated Mr. Paynter's right to informed consent.

¶3 Dr. Hamp moved for summary judgment, arguing that the Paynters' claims are "foreign cause[s] of action" pursuant to Wisconsin's borrowing statute, Wis. Stat. § 893.07 (2015-16).[1]

¶4 Wisconsin's borrowing statute adopts the limitations rule of a foreign jurisdiction and applies it to any "foreign cause of action" as if it were Wisconsin's own statute, provided that the foreign period of limitation is shorter than Wisconsin's period of limitation.[2]

¶5 Dr. Hamp argues that pursuant to Wisconsin's borrowing statute, Michigan's statute of limitations applies to the Paynters' claims. It is undisputed that if Michigan's statute of limitations applies, the Paynters' claims are untimely.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[2] Wis. Stat. § 893.07; Guertin v. Harbour Assur. Co. of Bermuda, Ltd., 141 Wis. 2d 622, 624 n.1, 415 N.W.2d 831.

2

¶6 The Paynters argue that their claims are not "foreign cause[s] of action" under the borrowing statute. Thus, they argue that Wisconsin's statute of limitations applies to their claims. It is undisputed that if Wisconsin's statute of limitations applies, the Paynters' claims are timely.

¶7 The circuit court granted Dr. Hamp's motion for summary judgment. It considered five factors that are traditionally used to resolve choice-of-law questions and concluded that those factors favored applying Michigan's statute of limitations. The Paynters appealed.

¶8 The court of appeals, applying a different analysis than the circuit court, affirmed the circuit court's order granting summary judgment to Dr. Hamp. The court of appeals announced that "in cases involving an injury or injuries that allegedly occurred in multiple states, the plaintiff's cause of action is not foreign, for purposes of the borrowing statute, when the first instance of injury occurred in Wisconsin."[3]

¶9 The court of appeals held that because the Paynters lived in Michigan during the four-year period between Dr. Hamp's alleged misdiagnosis and Mr. Paynter's discovery of his injury, the Paynters' negligence claim was "foreign" for purposes of the borrowing statute. The court of appeals further held that the Paynters' informed consent claim was "foreign" for purposes of the borrowing statute because Mr. Paynter was located in

---

[3] Paynter v. ProAssurance Wis. Ins. Co., 2018 WI App 27, ¶29, 381 Wis. 2d 239, 911 N.W.2d 374.

3

Michigan at the time his right to informed consent was allegedly violated. Accordingly, the court of appeals applied the Michigan statute of limitations to both claims and affirmed the circuit court order granting summary judgment in favor of Dr. Hamp. The Paynters petitioned this court for review.

¶10 On this issue of first impression, we hold that in medical malpractice cases involving a negligent misdiagnosis that results in a latent, though continuous, injury, whether the action is "foreign" for purposes of Wisconsin's borrowing statute is determined by whether the plaintiff's first injury occurred outside of Wisconsin.

¶11 We disagree with the court of appeals' conclusion that the borrowing statute applies to the Paynters' negligence claim. On the record before the court, Mr. Paynter's place of first injury appears to be beyond ascertainment to any reasonable, non-speculative degree. When the plaintiff's place of first injury is unknowable, as in the instant case, Wisconsin's borrowing statute does not apply.

¶12 However, we agree with the court of appeals that the Paynters' informed consent claim is "foreign" for purposes of Wisconsin's borrowing statute. Therefore, we apply Michigan's statute of limitations to the Paynters' informed consent claim and conclude that the claim is untimely. Dr. Hamp is entitled to summary judgment as to that claim.

¶13 Accordingly, the court of appeals' decision is affirmed in part and reversed in part. We remand the cause to the court of appeals in order to address the Paynters' argument

4

that the circuit court erred by determining that an insurance policy issued to Dr. Hamp by Defendant-Respondent ProAssurance Wisconsin Insurance Company did not provide coverage for the Paynters' claims.[4]

I

¶14 Unless otherwise noted, the following facts are undisputed.

¶15 David Paynter and his wife, Kathryn Paynter, live in Bessemer, Michigan, a city located near the Wisconsin-Michigan border.  In April 2010, Mr. Paynter saw Dr. Peter Areson, a Wisconsin physician, regarding a growth on the upper right side of his neck.  Dr. Areson referred Mr. Paynter to Dr. Hamp, an ear, nose, and throat specialist, who practiced both in Ashland, Wisconsin, and Ironwood, Michigan.

¶16 On June 10, 2010, Dr. Hamp performed an aspiration[5] of the growth on Mr. Paynter's neck.  The aspiration was performed in Dr. Hamp's Michigan office.  Dr. Hamp's staff transported the samples from Mr. Paynter's growth to Wisconsin to be analyzed by a pathologist.

---

[4] Paynter, 381 Wis. 2d 239, ¶3 n.3 ("Because we conclude the circuit court properly dismissed the Paynters' claims on other grounds, we need not address the Paynters' insurance coverage argument.").

[5] In this context, the term "aspiration" refers to the "[w]ithdrawal of fluid from a cavity by suctioning off with an aspirator" for the purpose of "obtain[ing] specimens." Paynter, 381 Wis. 2d 239, ¶5 n.4.

¶17 On June 14, 2010, Dr. Hamp's office received the pathologist's report, which indicated that Mr. Paynter's growth was cancerous. That same day, Dr. Hamp called the Paynters' home telephone in Michigan and told Mr. Paynter that the growth was not cancerous and that Mr. Paynter did not need any further treatment.[6]

¶18 Four years later, on June 19, 2014, Mr. Paynter had surgery to remove the growth and was diagnosed with cancer the same day. The doctor who performed the surgery requested that the pathology materials from the procedure be compared to the slides from the aspiration Dr. Hamp performed in June 2010. The following week, the doctor informed Mr. Paynter that his cancer had been present in June 2010.

¶19 The Paynters mailed a request for mediation[7] to Wisconsin's Medical Mediation Panels in May 2015.[8] On August 31, 2015, the Paynters filed the instant lawsuit in Ashland County

---

[6] As the court of appeals noted, certain facts relating to the telephone call appear to be in dispute. In his briefing before this court, Dr. Hamp does not appear to dispute that the call was made, at least for purposes of our review.

We assume that the call was made on June 14, 2010, and we note that Dr. Hamp's location at the time the call was made does not affect our analysis.

[7] Wisconsin Stat. § 655.44(4) tolls the statute of limitations applicable to medical malpractice actions "on the date of mailing if [the request is] sent by registered mail."

[8] The parties dispute the exact date that the Paynters mailed their request for mediation. The dispute does not affect our analysis.

Circuit Court against Dr. Hamp; his Michigan medical malpractice insurer, American Physicians Assurance Company; and his Wisconsin medical malpractice insurer, ProAssurance Wisconsin Insurance Company.[9]

¶20 Mr. Paynter alleged that as a result of Dr. Hamp's negligent failure to diagnose his cancer in June 2010, he was required to undergo extensive surgery and radiation, resulting in permanent injuries and damages, including facial paralysis. Mrs. Paynter alleged that as a result of injuries sustained by Mr. Paynter, she was deprived of the society and companionship of her spouse.

¶21 During his deposition, Dr. Hamp admitted that "[Mr. Paynter's] survival and prognosis would be improved if he had been treated in 2010 versus 2014." On this point, Dr. Hamp was confident, testifying: "I'm not guessing."

¶22 Dr. Hamp claimed in his deposition that he did not see the pathologist's report, but that if he had, he would have recommended that Mr. Paynter have the growth on his neck surgically removed regardless of whether it was malignant because even benign growths will continue to expand and,

---

[9] The Paynters' complaint named two other physicians and their respective insurers as defendants. However, the Paynters stipulated to the dismissal of their claims against one of those physicians and his insurer, and they did not oppose the other physician's motion for summary judgment, which the circuit court granted.

eventually, get to the point where they will break down the skin.

¶23  Mr. Paynter also alleged that Dr. Hamp violated his right to informed consent, resulting in permanent injuries and damages.  Mrs. Paynter alleged that as a result of Dr. Hamp's violation of Mr. Paynter's right to informed consent, she was deprived of the society and companionship of her spouse.

¶24  The Paynters asserted in their complaint that Mr. Paynter first knew or should have known of his injury on or after June 19, 2014.

¶25  ProAssurance moved for summary judgment, arguing that the policy it issued to Dr. Hamp did not provide coverage for the Paynters' claims.  The circuit court denied ProAssurance's motion, stating that "if there was failure to provide information that fell short of the standard of care that failure occurred in Wisconsin, and it wasn't because the biopsy was done in a manner that fell beyond the professional standard.  It is clearly the interpretation and communication of the results. And none of that happened in Michigan . . . ."

¶26  Based on these statements, the Paynters and Dr. Hamp believed that they were entitled to summary judgment on the coverage issue.  The Paynters moved for summary judgment, and Dr. Hamp joined the Paynters' motion.

¶27  This time, however, the circuit court concluded that a "professional incident" occurred in Michigan because Dr. Hamp gave Mr. Paynter a preliminary opinion that the growth was benign immediately after the aspiration was performed.

Accordingly, the circuit court granted summary judgment to ProAssurance. After additional arguments regarding what actions Dr. Hamp took in Wisconsin, the circuit court indicated that the Paynters should file a motion for reconsideration.

¶28 Before the circuit court decided the Paynters' motion for reconsideration, Dr. Hamp moved for summary judgment, arguing that Wisconsin's borrowing statute required the application of Michigan's statute of limitations to the Paynters' claims, and under Michigan's statute of limitations, the Paynters' claims were untimely.

¶29 The circuit court granted Dr. Hamp's motion for summary judgment. It considered five factors that are traditionally used to resolve choice of law questions[10] and concluded that those factors favored applying Michigan's statute of limitations. Having granted Dr. Hamp's motion for summary judgment, the circuit court never addressed the Paynters' motion for reconsideration regarding whether the ProAssurance policy covered their claims against Dr. Hamp. The Paynters appealed.

¶30 The court of appeals affirmed the circuit court's order, but on different grounds. The court of appeals announced that "in cases involving an injury or injuries that allegedly

---

[10] See State Farm Mut. Auto. Ins. Co. v. Gillette, 2002 WI 31, ¶53, 251 Wis. 2d 561, 641 N.W.2d 662 (setting forth the following factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law).

9

occurred in multiple states, the plaintiff's cause of action is not foreign, for purposes of the borrowing statute, when the first instance of injury occurred in Wisconsin."[11]

¶31 Before determining where the "first injury" occurred, the court of appeals first sought to determine when the first injury occurred. In determining when Mr. Paynter's first injury occurred, the court of appeals observed that in negligent misdiagnosis cases, "an actionable injury occurs when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis."[12]

¶32 The court of appeals concluded that in the instant case, Dr. Hamp made a prima facie showing that Mr. Paynter's first injury occurred in Michigan because the record showed that the Paynters resided in Michigan during the four-year period of time between Dr. Hamp's alleged misdiagnosis and Mr. Paynter's discovery of his injury. The court of appeals further concluded that Mr. Paynter's averment that he "was frequently in Wisconsin in between the years 2010 and 2015" failed to rebut Dr. Hamp's prima facie case that the Paynters' suit was a "foreign cause of action" under Wisconsin's borrowing statute. The court of appeals stated that the Paynters did not provide sufficient evidence to "establish——or even suggest——at what point in time

---

[11] Paynter, 381 Wis. 2d 239, ¶29.

[12] Id., ¶3 (citing Paul v. Skemp, 2001 WI 42, ¶25, 242 Wis. 2d 507, 625 N.W.2d 860).

[Mr. Paynter] first experienced a greater harm than that which existed at the time of the misdiagnosis."[13]

¶33 The court of appeals further concluded that the Paynters' informed consent claim was "foreign" for purposes of the borrowing statute. The court noted that Dr. Hamp first allegedly violated Mr. Paynter's right to informed consent during the June 14, 2010 phone call, and it is undisputed that Mr. Paynter was located in his Michigan home when he received that call. "Because [Mr. Paynter] was located in Michigan at that time, his alleged injury——i.e., the loss of the opportunity to choose his course of treatment——occurred in Michigan, not Wisconsin."[14]

¶34 Accordingly, the court of appeals applied the Michigan statute of limitations to both claims and affirmed the circuit court order granting summary judgment in favor of Dr. Hamp.[15] The Paynters petitioned this court for review.

II

---

[13] Id., ¶36.

[14] Id., ¶39.

[15] Before the court of appeals, the Paynters conceded that the viability of Mrs. Paynter's derivative claims depends on the viability of Mr. Paynter's claims. Because the court of appeals concluded that Mr. Paynter's claims were untimely, it further concluded that the circuit court properly granted summary judgment to Dr. Hamp on Mrs. Paynter's claims. Paynter, 381 Wis. 2d 239, ¶44 n.13.

11

¶35 This court applies the same method of analysis to a motion for summary judgment as does the circuit court.[16] Summary judgment is appropriate under Wis. Stat. § 802.08(2) where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17]

¶36 Our review of the instant case also requires us to interpret and apply Wisconsin's borrowing statute, Wis. Stat. § 893.07. "[S]tatutory construction is a question of law, which we review de novo, even though we benefit from the analyses of the circuit court and the court of appeals."[18]

III

A

¶37 Dr. Hamp argues that the Paynters' claims are "foreign cause[s] of action" pursuant to Wisconsin's borrowing statute, Wis. Stat. § 893.07. As such, Dr. Hamp contends that Michigan's statute of limitations applies to the Paynters' claims. It is undisputed that if Michigan's statute of limitations applies, the Paynters' claims are time barred.

---

[16] Paul, 242 Wis. 2d 507, ¶8.

[17] Wis. Stat. § 802.08(2).

[18] Paul, 242 Wis. 2d 507, ¶10 (citing Czapinski v. St. Francis Hosp., 2000 WI 80, ¶12, 236 Wis. 2d 316, 613 N.W.2d 120).

¶38 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'"[19]

¶39 Wisconsin's borrowing statute, Wis. Stat. § 893.07, provides as follows:

(1)  If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.

(2)  If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

¶40 The meaning of the phrase "foreign cause of action" is far from plain. The phrase "foreign cause of action" is not, and has never been, expressly defined in Wisconsin's borrowing statute. The phrase also appears to be unique to the borrowing statute; that is, the phrase appears nowhere else in the Wisconsin statutes.

¶41 In Guertin v. Harbour Assurance Company of Bermuda, Ltd., 141 Wis. 2d 622, 415, N.W.2d 831 (1987), this court was required to determine whether the plaintiff's cause of action constituted a "foreign cause of action" pursuant to Wisconsin's borrowing statute. The plaintiff, Frank Guertin, was a

---

[19] State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659).

13

Wisconsin resident who was injured in the state of Illinois when he slipped and fell off the fuel tank of a semi-trailer he was employed to drive.[20]

¶42 We determined that the phrase "foreign cause of action" was ambiguous, and therefore, we turned "to extrinsic sources to determine what the legislature meant by the phrase."[21] Before turning to extrinsic sources, however, we examined the statutory history of Wisconsin's borrowing statute.

¶43 We observed that "[i]n 1979, the legislature restructured Chapter 893, Limitations of Commencement of Actions and Proceedings and Procedure for Claims Against Governmental Units."[22] In that revision, the Judicial Council redrafted Wisconsin's borrowing statute, then numbered Wis. Stat. § 893.205, and renumbered it Wis. Stat. § 893.07.

¶44 Former Wis. Stat. § 893.205(1) did not use the phrase "foreign cause of action," but instead referred to "injuries to the person, received without this state."[23]

¶45 We then examined the Judicial Council Committee's Note to Wis. Stat. § 893.07 to help us determine the significance of the changes to the statutory text and derive meaning from the

---

[20] _Guertin v. Harbour Assur. Co. of Bermuda, Ltd._, 141 Wis. 2d 622, 624-25, 415 N.W.2d 831 (1987).

[21] _Id._ at 628; _see also_ _Kalal_, 271 Wis. 2d 633, ¶50.

[22] _Guertin_, 141 Wis. 2d at 628.

[23] Wis. Stat. § 893.205(1) (1977-78); _Guertin_, 141 Wis. 2d at 629.

14

newly enacted language. Although the revised version of the statute substantively changed the borrowing statute in ways that are not relevant to the present case,[24] the Committee observed that other provisions of ch. 893 retained the same form in which they had previously existed and were "redrafted only for greater clarity and ease of application[.]"[25]

¶46 We concluded that it was "apparent from the Committee's comments that the Council considered the phrase 'foreign cause of action' to be synonymous with the language of the former borrowing statute, sec. 893.205(1), Stats. (1977), which barred actions 'for injuries to the person, received without this state.'"[26]

¶47 Accordingly, we declared that a cause of action is "foreign" for purposes of Wisconsin's borrowing statute if the plaintiff's injury occurred outside of Wisconsin.[27]

¶48 We then applied the "place of injury" test. This was a simple task, given that the injury in Guertin was immediate and discrete. Mr. Guertin fell off his semi-trailer and

---

[24] For example, the revisions changed the law of prior Wis. Stat. § 893.205(1), which had provided that a resident in Wisconsin could sue in Wisconsin state courts to recover damages for personal injuries experienced outside of Wisconsin even if the foreign period of limitation had expired. Guertin, 141 Wis. 2d at 629.

[25] Guertin, 141 Wis. 2d at 629.

[26] Id. at 630.

[27] Id. at 630-31.

15

sustained injuries in Illinois. Therefore, Mr. Guertin's claims were "foreign cause[s] of action" pursuant to Wisconsin's borrowing statute. The Illinois statute of limitations for personal injury actions applied to his claims, and therefore, they were properly dismissed as untimely.

B

¶49 Although it was clear how to apply the "place of injury" test under the facts of Guertin, application of the test in subsequent cases proved more difficult. The test needed additional gloss to cleanly apply to other claims and fact scenarios where the plaintiff's "place of injury" was not easily pinned down to one particular time and location.

¶50 For example, in Abraham v. General Casualty Company of Wisconsin, 217 Wis. 2d 294, 576 N.W.2d 46 (1998), we had to decide whether Wisconsin's borrowing statute applied to contract actions.

¶51 In the Abraham case, the plaintiff, Paul Abraham, was injured by an automobile while riding his bicycle in the state of Florida.[28] After exhausting the tortfeasor's liability insurance policy limits, Mr. Abraham notified his insurer, General Casualty Company of Wisconsin, that he intended to seek underinsured motorist benefits.[29] When General Casualty refused

---

[28] Abraham v. General Cas. Co. of Wis., 217 Wis. 2d 294, ¶3, 576 N.W.2d 46 (1998).

[29] Id., ¶¶4-7.

16

to pay the underinsured motorist benefits, Mr. Abraham sued General Casualty in Wisconsin for breach of contract.[30]

¶52 We held that the borrowing statute applied to contract actions,[31] but we were mindful that determining the location of the plaintiff's injury "may be more difficult 'in the case of a dispute over a contract, whose 'location' is not easily pinned to a particular state if, for example, as is common, the contract is negotiated in one state, signed in another, and performed in a third.'"[32]

¶53 After "wad[ing] into [a] morass of arguments and precedent,"[33] we determined that the location of "the final significant event giving rise to a suable claim" should be the determinative factor in deciding whether a claim sounding in contract constitutes a "foreign cause of action" for purposes of the borrowing statute.[34]

¶54 We explained that this standard was "not only consistent with _Guertin_'s interpretation of Wis. Stat.

---

[30] _Id._, ¶¶7-8.

[31] _Id._, ¶15.

[32] _Id._, ¶21 (quoting _Johnson v. Deltadynamics, Inc._, 813 F.2d 944, 946 (7th Cir. 1987)).

[33] _See Abraham_, 217 Wis. 2d 294, ¶¶21-31.

[34] _Id._, ¶35; _see also Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co._, 372 F.2d 18 (3d Cir. 1966); _Terranova v. Terranova_, 883 F. Supp. 1273 (W.D. Wis. 1995).

§ 893.07," but also clarified, if imperfectly,[35] how that interpretation was to apply "to causes of action sounding in contract where it is frequently difficult to attach the plaintiff's contractual 'injury' to any one locale."[36]

¶55 Applying this framework to the facts of Abraham, we concluded that the "final significant event" giving rise to a suable claim for underinsured motorist benefits was the insurance company's refusal to pay the benefits upon Mr. Abraham's request. That denial occurred in Wisconsin, and therefore, Mr. Abraham's claim for underinsured motorist benefits was not a "foreign cause of action" under Wisconsin's borrowing statute.

¶56 Likewise, in Faigin v. Doubleday Dell Publishing Group, Inc., 98 F.3d 268 (7th Cir. 1996), it was not obvious how to properly apply Wisconsin's borrowing statute and our "place of injury" test in the context of a multi-state defamation suit.

¶57 In Faigin, sports agent A.J. Faigin represented James E. Kelly, a former quarterback for the National Football League's Buffalo Bills.[37] Mr. Kelly spoke unfavorably of Mr.

---

[35] See Abraham, 217 Wis. 2d 294, ¶35 n.7 (recognizing "that in certain factual situations," the final significant event test "would not be without ambiguity," but emphasizing that, "as with any judicial standard, no one 'test' can give complete certainty to future litigants.'").

[36] Id., ¶35.

[37] Faigin v. Doubleday Dell Pub. Grp., Inc., 98 F.3d 268, 269 (7th Cir. 1996).

Faigin in an autobiography published by the defendant, Doubleday Dell Publishing Group.[38] Of the 28,600 copies of the autobiography that were sold to bookstores, only 41 of them were sold to bookstores in Wisconsin; that is, "a staggering 99.86 percent occurred outside Wisconsin."[39]

¶58 When Mr. Faigin sued Doubleday for defamation in the Eastern District of Wisconsin, Doubleday argued that Mr. Faigin's suit was a "foreign cause of action" under Wisconsin's borrowing statute. The district court agreed and granted summary judgment to Doubleday, concluding "that when the plaintiff's injury has occurred in more than one state, it amounts to a 'foreign' cause of action governed by Wisconsin's borrowing statute, notwithstanding the fact that Wisconsin is one of the states in which injury occurred."[40]

¶59 The Seventh Circuit reversed. It stated that determining the locations of Mr. Faigin's injuries was "straightforward enough."[41] There was evidence supporting the conclusion that Mr. Faigin was injured in Wisconsin, albeit minimally, and there was also evidence supporting the conclusion that Mr. Faigin was injured in other states where the autobiography was sold.[42] The Faigin court explained that

---

[38] Id. at 269.

[39] Id. at 273 (Evans, J., dissenting).

[40] Id. at 269-70.

[41] Id. at 270.

[42] Id.

19

"[t]his is a quirk of libel law: the plaintiff is generally considered to be injured wherever the defamatory writing is published. In other words, although it is clear where Faigin allegedly was injured, the place of injury cannot be narrowed to one state."[43]

¶60 This "quirk of libel law" forced the Seventh Circuit "to decide between a rule that deems all multi-state libel claims foreign or all of them not[.]"[44] The Faigin court ultimately decided "that the latter is the better of two imperfect choices[.]"[45] "As it stands," the Faigin court explained, "the Wisconsin statute asks one question: did the injury occur inside Wisconsin?"[46] Because the answer in Faigin was "yes, if not exclusively[,]" Mr. Faigin's defamation claim did not constitute a foreign cause of action for purposes of the borrowing statute.[47]

C

¶61 Our discussion of the case law above illustrates that both state and federal courts construing Wisconsin's borrowing statute have focused on the location of the plaintiff's injury in determining whether a cause of action is "foreign" for

---

[43] Id.

[44] Id. at 272.

[45] Id.

[46] Id.

[47] Id.

purposes of the borrowing statute. Generally speaking, the plaintiff's injury is the "final significant event" giving rise to a cause of action, and it is the plaintiff's location when that injury is sustained that determines whether the cause of action is "foreign" for purposes of Wisconsin's borrowing statute. Although the "place of injury" test has not always been easy to apply, the focus has always remained on identifying the location in which the plaintiff suffered his or her injury.

¶62 Like Abraham and Faigin, the instant case provides another example of a category of cases in which the "place of injury" test requires more gloss. Unlike the single, discrete injury at issue in Guertin (the plaintiff's fall from his truck in Illinois) and the multiple, discrete injuries in Faigin (the sale of libelous books in multiple states, including Wisconsin), the instant case involves an alleged negligent misdiagnosis that resulted in a latent, though continuous, injury.

¶63 We have previously determined what constitutes an actionable "injury" in negligent misdiagnosis cases for purposes of triggering the medical malpractice statute of limitations, Wis. Stat. § 893.55(1m).

¶64 In Paul v. Skemp, 2001 WI 42, 242 Wis. 2d 507, 625 N.W.2d 860, an arteriovenous malformation (AVM) in Jennifer Paul's brain ruptured, causing extensive hemorrhaging and, eventually, her death.[48] Jennifer's parents and Jennifer's

---

[48] Paul v. Skemp, 2001 WI 42, ¶5, 242 Wis. 2d 507, 625 N.W.2d 860.

estate sued two of Jennifer's doctors, claiming that the doctors misdiagnosed the cause of Jennifer's recurring headaches, resulting in the ruptured AVM.[49]

¶65 The doctors maintained that Jennifer's "injury" was the alleged misdiagnosis.[50] They argued that because the Pauls' claims were not brought within three years of Jennifer's last complaint about her headaches, the Pauls' claims were time barred.

¶66 The Pauls, on the other hand, maintained that what triggered the statute of limitations was not the alleged misdiagnosis, but rather the rupture of the AVM and the resultant hemorrhaging.[51] They argued that their claims were timely because they were brought within three years of the rupture of Jennifer's AVM.[52] The Pauls additionally submitted, in opposition to the doctors' motion for summary judgment, an affidavit from an expert witness, who concluded to a reasonable degree of medical certainty that had Jennifer's AVM "been properly diagnosed at any time prior to May 1, 1995, it [was] more likely than not that [Jennifer] would not have sustained the injury and disability she ultimately experienced on May 22, 1995."[53]

---

[49] Id., ¶1.

[50] Id., ¶12.

[51] Id., ¶13.

[52] Id.

[53] Id.

¶67 In resolving what event constituted the actionable "injury," we relied on persuasive authority from other jurisdictions that had previously faced the same issue and concluded that "[a] misdiagnosis, in and of itself, is not, and cannot, be an actionable injury[]" because "[t]he misdiagnosis is the negligent omission, not the injury."[54] We explained that "[t]he actionable injury arises when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis."[55]

¶68 Applying this standard to the facts of the case, the Paul court concluded that Jennifer's actionable injury occurred "either at the time that Jennifer's AVM ruptured, or at the time that Jennifer's AVM could no longer be treated."[56] Because both of these events would have occurred within the applicable three-year statute of limitations, we held that the Pauls' claims were timely.[57]

D

¶69 The Paynters maintain that the Seventh Circuit's reasoning in Faigin should apply to their medical malpractice claims. That is, because Dr. Hamp admitted that Mr. Paynter's

---

[54] Paul, 242 Wis. 2d 507, ¶25; see St. George v. Pariser, 484 S.E.2d 888, 891 (Va. 1997) (concluding that the plaintiff's injury was not the failure to diagnose a mole as cancerous, but rather, "the change in her cancerous condition" from a curable state to a potentially fatal state).

[55] Paul, 242 Wis. 2d 507, ¶25.

[56] Id., ¶45.

[57] Id.

23

growth would continue to expand unless and until it was surgically removed, Mr. Paynter was essentially suffering one continuous injury as his growth expanded. Put another way, "the misdiagnosis cause[d] greater harm than existed at the time of the misdiagnosis" in a continuous fashion as the cancer grew.[58] Thus, they argue, if Mr. Paynter entered Wisconsin during the four-year period of time between the misdiagnosis on June 10, 2010 and the growth's removal on June 19, 2014, "at least some" of Mr. Paynter's injury occurred in Wisconsin.[59]

¶70 We reject the Paynters' invitation to apply _Faigin_'s reasoning to the facts of the instant case. While we do not comment on the merits of the Seventh Circuit's legal analysis in _Faigin_ as applied to multi-state libel suits, it is clear to us that _Faigin_'s analysis turned on the unique "quirk" of libel law that generally considers a plaintiff to be injured wherever the defamatory writing is published. That is, as the court of appeals correctly pointed out, "_Faigin_ involved multiple, discrete injuries in different states[,]" whereas here, "the Paynters have asserted a single, continuous injury, which they allege was ongoing for the entire period between June 2010 and June 2014, during which time David was physically present in both Michigan and Wisconsin."[60]

---

[58] See _id._, ¶25.

[59] See _Faigin_, 98 F.3d at 270-72.

[60] _Paynter_, 381 Wis. 2d 239, ¶26.

24

¶71 The Paynters' proposed analysis, if adopted, would render non-foreign virtually all medical malpractice cases involving the failure to diagnose cancer. Given that one of the primary purposes underlying Wisconsin's borrowing statute is to prevent forum shopping,[61] we cannot accept the ease with which a negligent misdiagnosis claim could be transformed from a "foreign" cause of action to a non-foreign one under the Paynters' theory. Such an interpretation would, without limitation, apply the Wisconsin statute of limitations to anyone who simply travels to Wisconsin, regardless of the frequency or duration of such travel.

¶72 Instead, we agree with the court of appeals that in medical malpractice cases involving a negligent misdiagnosis that results in a latent, though continuous, injury, whether the action is "foreign" for purposes of Wisconsin's borrowing statute is determined by whether the plaintiff's first injury occurred in Wisconsin.

¶73 In our view, the "first injury" test best comports with the case law construing Wisconsin's borrowing statute and the case law describing when a plaintiff suffers an actionable "injury" in the context of a negligent misdiagnosis. As in other cases in which the phrase "foreign cause of action" needed additional gloss to determine whether and how Wisconsin's borrowing statute should apply in a particular context,[62] the

---

[61] Guertin, 141 Wis. 2d at 631.

[62] See supra ¶¶50-60 (describing Abraham and Faigin).

25

"first injury" test focuses on when a misdiagnosed plaintiff has a suable claim. A tort becomes "complete" when the plaintiff is injured, and the plaintiff in a negligent misdiagnosis case becomes injured when he or she <u>first</u> experiences greater harm as a result of the misdiagnosis than existed at the time of the misdiagnosis.[63] If the plaintiff is located outside of Wisconsin when this occurs, the action is "foreign" for purposes of Wisconsin's borrowing statute.[64]

---

[63] See <u>Paul</u>, 242 Wis. 2d 507, ¶25

[64] In addition to being grounded in statutory history and our prior cases interpreting Wisconsin's borrowing statute, tying the application of the borrowing statute to the plaintiff's place of first injury provides the highest degree of certainty to the party most in need of that certainty, i.e., the plaintiff bringing the action.

Plaintiffs need to know whether the borrowing statute applies so that they can timely file their claims. Generally speaking, plaintiffs are more likely to know where their injury occurred because they are in control of their own movements and actions. For example, if Mr. Paynter did not leave the state of Michigan during the four-year period of time relevant to the instant case, he would know that regardless of when his first injury occurred, it occurred in Michigan because he never left the state. He would know with a significant degree of certainty that the borrowing statute applied to his claim.

However, in addition to lacking support in the statutory history and our case law, alternative approaches also provide lesser, not greater certainty from the perspective of a plaintiff. If operation of the borrowing statute depended on whether <u>every element</u> of the claim occurred outside of Wisconsin, plaintiffs who first suffered an injury at a reasonably discernable time and place outside of Wisconsin would be left with the additional (and difficult) task of determining where the other elements of their claim occurred.

26

¶74 As we explain more fully below, however, the time and location of plaintiff's "first injury" must be capable of ascertainment to a reasonable, non-speculative degree. When the plaintiff's place of first injury is unknowable, but could have occurred within or outside of Wisconsin, Wisconsin's borrowing statute does not apply.

IV

A

¶75 We first address the Paynters' negligence claim.

¶76 Dr. Hamp argues, and the court of appeals agreed, that he made a prima facie showing that Mr. Paynter suffered his first injury in Michigan by presenting evidence that the Paynters lived continuously in Michigan during the four-year period of time between Dr. Hamp's alleged misdiagnosis and Mr. Paynter's discovery of his injury.

¶77 Dr. Hamp further argues, and the court of appeals agreed, that Mr. Paynter's averment that he "was frequently in Wisconsin in between the years 2010 and 2015" fails to rebut Dr. Hamp's prima facie case because, as the court of appeals held, the Paynters did not provide sufficient evidence to "establish—or even suggest—at what point in time [Mr. Paynter] first experienced a greater harm than that which existed at the time of the misdiagnosis," and where Mr. Paynter was located when he experienced that greater harm.[65]

---

[65] See Paynter, 381 Wis. 2d 239, ¶36.

27

¶78 We conclude that, on the record before the court, Mr. Paynter's place of first injury is beyond ascertainment to any reasonable, non-speculative degree. In such circumstances, Wisconsin's borrowing statute does not apply.

¶79 In reaching this conclusion, we are guided by the court of appeals' decision in Brusa v. Mercy Health System, Inc., 2007 WI App 166, 304 Wis. 2d 138, 737 N.W.2d 1.

¶80 In Brusa, it was alleged that a negligent delay in correctly diagnosing Mr. Brusa with colon cancer caused Mr. Brusa's death.[66] Mr. Brusa's son, Joseph, who was four months old at the time of his father's death, brought a derivative suit against the doctor.[67]

¶81 The right to pursue a derivative claim for medical malpractice is determined by the plaintiff's status at the time of the patient's injury.[68] The court of appeals, therefore, was tasked with determining Mr. Brusa's "date of injury" and deciding whether Joseph had been conceived by that date.[69]

¶82 After a discussion of this court's decision in Paul,[70] the court of appeals stated:

---

[66] Brusa v. Mercy Health Sys., Inc., 2007 WI App 166, ¶1, 304 Wis. 2d 138, 737 N.W.2d 1.

[67] Id., ¶1.

[68] Id. (citing Conant v. Physicians Plus Med. Group, Inc., 229 Wis. 2d 271, 274, 600 N.W.2d 21 (Ct. App. 1999)).

[69] Brusa, 304 Wis. 2d 138, ¶15.

[70] See supra ¶¶64-68.

28

Here, Brusa's date of injury has not been established and is not ascertainable from the record. An injurious change may have occurred shortly after Brusa first consulted with Dr. Fasano, it may have occurred four weeks later when Brusa was to have had a colonoscopy, it may have occurred at some later date, or it may be that Brusa's cancer was untreatable even before he first consulted Dr. Fasano. Even if we accept Dr. Fasano's concession of negligence, which was offered only for the sake of argument on appeal, this question remains: When did Dr. Fasano's misdiagnosis cause Brusa "greater harm" than existed on December 27, 2002?[71]

¶83 In this respect, the record in the instant case is similar to Brusa. When Dr. Hamp's alleged negligent misdiagnosis caused Mr. Paynter "greater harm" than existed at the time of the misdiagnosis appears to be unknowable. We can think of no test by which a finder of fact could determine the location of Mr. Paynter's first injury without speculating.

¶84 Dr. Hamp admitted in his deposition that Mr. Paynter's prognosis would have been improved had Mr. Paynter been treated in 2010 as opposed to 2014; that is, it is undisputed that Mr. Paynter suffered an injurious change in condition at some point between June 2010, when Dr. Hamp is alleged to have negligently failed to diagnose Mr. Paynter's cancer, and June 2014, when Mr. Paynter discovered that his cancer had been present in June 2010.

¶85 Dr. Hamp's argument that Mr. Paynter suffered his first injury in Michigan rests entirely upon the fact that the Paynters resided in Michigan during the four-year period of time

---

[71] Brusa, 304 Wis. 2d 138, ¶14.

29

in which Mr. Paynter suffered his first injury. There is nothing in the record showing that the Paynters were continuously in the state of Michigan for four years. In fact, the opposite is true. Mr. Paynter averred that he was frequently in Wisconsin during that four-year period of time.

¶86 On the record before the court, when and where Mr. Paynter suffered his first injury appears to be beyond ascertainment to any reasonable, non-speculative degree. The record is insufficient to make a reasonable inference one way or the other.[72] Wisconsin's borrowing statute applies only to "foreign cause[s] of action," and if the plaintiff's place of

---

[72] Although we acknowledge that the first injury test may result in some degree of uncertainty in particular cases, especially when the period of time between misdiagnosis and discovery of the injury is extensive, no judicial standard can give complete certainty to future litigants. Abraham, 217 Wis. 2d 294, ¶35 n.7.

Additionally, we note that not every fact scenario will result in complete uncertainty as to the time and location of the plaintiff's first injury. For example, in Paul, the period of time between the last misdiagnosis and the plaintiff's first injury was, at most, five weeks. It does not appear that it would have been an impossible task to determine where the plaintiff was located during those five weeks had it been relevant to decide the issue.

However, the record before this court is an example of a set of facts under which the plaintiff's place of first injury is unknowable, and when the record is such that a fact finder can only speculate as to the location of the plaintiff's first injury, the borrowing statute does not apply.

first injury is unknowable, as in the instant case, the borrowing statute does not apply.[73]

¶87 Because the borrowing statute does not apply to the Paynters' negligence claim, we apply Wisconsin's medical malpractice statute of limitations to that claim.

¶88 Dr. Hamp concedes, and we agree, that the Paynters' negligence claim is timely under Wisconsin's medical malpractice statute of limitations, Wis. Stat. § 893.55(1m).

¶89  Section 893.55(1m) provides that:

---

[73] That is not to say that every plaintiff whose place of first injury is unknowable may bring an action in Wisconsin courts.

Separate and apart from whether the borrowing statute applies to the Paynters' claims, the jurisdictional requirements set forth in International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945), must still be met.

In International Shoe, the United States Supreme Court explained that due process requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'".  Int'l Shoe, 326 U.S. at 316.

The parties did not brief this issue.  Nonetheless, we have no trouble concluding that Dr. Hamp had the requisite "minimum contacts" with Wisconsin.  Dr. Hamp is licensed to practice medicine in Wisconsin.  He maintains an office in Ashland, Wisconsin.  Although Dr. Hamp performed the aspiration on Mr. Paynter's growth in his Michigan office, Dr. Hamp sent the samples to Wisconsin where they were analyzed by a pathologist. Given these contacts with the state of Wisconsin, it does not offend "traditional notions of fair play and substantial justice" to subject Dr. Hamp to the jurisdiction of Wisconsin state courts.

31

[A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

¶90 It is undisputed that Mr. Paynter first discovered his injury on June 19, 2014. It is also undisputed that the Paynters mailed their request for mediation to the Wisconsin Medical Mediation Panels sometime during May 2015, which was within one year of June 19, 2014, and was not more than five years after the act giving rise to the Paynters' injury——i.e., the June 14, 2010 misdiagnosis.

¶91 Accordingly, the Paynters' negligence claim against Dr. Hamp is timely. Dr. Hamp is not entitled to summary judgment as to that claim.

B

¶92 Next, we address the Paynters' claim that Dr. Hamp violated Mr. Paynter's right to informed consent.

¶93 Dr. Hamp argues that, to the extent Dr. Hamp violated Mr. Paynter's right to informed consent, that injury occurred in Michigan because Mr. Paynter was in Michigan when Dr. Hamp allegedly informed him that his growth was not malignant and needed no further treatment.

32

¶94 The Paynters urge us to apply the reasoning set forth in Abraham[74] and conclude that their informed consent claim is not foreign because the "last significant event" giving rise to their claim——i.e., Dr. Hamp's conveyance of his incorrect diagnosis——occurred in Wisconsin.

¶95 We agree with Dr. Hamp and conclude that the Paynters' informed consent claim is a "foreign cause of action" for purposes of Wisconsin's borrowing statute.

¶96 In reaching our conclusion, we are guided by the Eastern District of Wisconsin's decision in Studio & Partners, s.r.l. v. KI, No. 06-C-628, 2007 WL 3342597 (E.D. Wis. Nov. 7, 2007).

¶97 In Studio & Partners, plaintiff Studio & Partners (S&P), an Italian company, claimed that KI, a Wisconsin company, unlawfully misappropriated S&P's design for a chair used in schools and other academic settings.[75] S&P argued that it sustained injuries in Wisconsin because that is where KI allegedly: (1) misappropriated S&P's design; (2) concealed its misappropriation; (3) sold the products; (4) caused the filings for fraudulent patents; and (5) earned profits on the stolen design.[76]

---

[74] See supra ¶¶50-55.

[75] Studio & Partners, s.r.l. v. KI, No. 06-C-628, 2007WL3342597, *1 (E.D. Wis. Nov. 7, 2007).

[76] Id., *3.

33

¶98 The Eastern District of Wisconsin rejected S&P's argument, explaining that "it is apparent that these events reflect where the alleged injury was caused, not where it occurred."[77] The court in Studio & Partners concluded that the injury occurs where it is felt rather than where it originates, and it was undisputed that "S&P became poorer (if at all) in Italy, not Wisconsin."[78]

¶99 We agree with the reasoning set forth in Studio & Partners. To the extent Dr. Hamp violated Mr. Paynter's right to informed consent, that injury was felt in Michigan because Mr. Paynter was in Michigan when Dr. Hamp allegedly informed him that his growth was not malignant and needed no further treatment. As the court of appeals explained, "[b]ecause [Mr. Paynter] was located in Michigan at that time, his alleged injury——i.e., the loss of the opportunity to choose his course of treatment——occurred in Michigan, not Wisconsin."[79]

---

[77] Id. (emphasis in original).

[78] Id.

[79] Paynter, 381 Wis. 2d 239, ¶39.

(continued)

¶100 Dr. Hamp proved that the Paynters' informed consent claim is a "foreign cause of action" for purposes of Wisconsin's borrowing statute. Accordingly, we apply Michigan's medical malpractice statute of limitations.

¶101 Michigan's statute of limitations applicable to medical malpractice actions requires a plaintiff to file suit within the later of: (1) two years from the date his or her claim accrued;[80] or (2) six months after the plaintiff discovered

---

Basing the applicability of the borrowing statute on whether the test in International Shoe is met is not helpful. The jurisdictional test set forth in International Shoe addresses a different issue than the borrowing statute, namely, the former addresses a court's personal jurisdiction over a particular defendant while the latter addresses what statute of limitations applies to a claim that is lawfully brought in a Wisconsin court. If the International Shoe test is met, then the claim may be brought in Wisconsin, but that does not answer the question of whether the borrowing statute applies to the claim. If the International Shoe test is not met, then the claim may not be brought in Wisconsin at all. Under such a test, no claim lawfully brought in Wisconsin will ever be considered a "foreign cause of action" under the borrowing statute.

Moreover, as we explained more fully in footnote 64 supra, our approach supplies the highest degree of certainty possible to plaintiffs. Mr. Paynter knew where he was located when he allegedly lost the opportunity to choose his course of treatment. However, that certainty would be undermined if the applicability of the borrowing statute turned on where Dr. Hamp was located when he committed the allegedly tortious act. Given the increased utilization of telemedicine in our healthcare system, Mr. Paynter and similarly situated plaintiffs should not be tasked with divining where their physician happened to be located when the alleged tortious act was committed.

[80] Mich. Comp. Laws § 600.5805(8) (2018).

or should have discovered the existence of his or her claim.[81] In Michigan, a claim for medical malpractice "accrues" when the malpractice occurs.[82]

¶102 Again, it is undisputed that the Paynters mailed their mediation request in May 2015, which was more than two years after the June 14, 2010 misdiagnosis. It is further undisputed that the Paynters discovered or should have discovered the existence of their claim on June 19, 2014, but they did not mail their mediation request within six months of that date.

¶103 Accordingly, the Paynters' informed consent claim against Dr. Hamp is untimely. Dr. Hamp is entitled to summary judgment as to this claim.

V

¶104 Finally, before concluding, we address the Paynters' appeal from the circuit court's order determining that an insurance policy issued to Dr. Hamp by Defendant-Respondent ProAssurance Wisconsin Insurance Company did not provide coverage for the Paynters' claims. The court of appeals did not resolve the coverage issue because it concluded that all of the Paynters' claims were time barred.

¶105 The Paynters' petition for review raised the insurance coverage issue only to preserve it. Their petition states that "[b]ecause the unique policy language in issue does not meet

---

[81] Mich. Comp. Laws § 600.5838a(2) (2018).

[82] Mich. Comp. Laws § 600.5838a(1) (2018).

this court's criteria for review, the Paynters request that this issue be remanded to the appellate court upon reinstatement of their cause of action."

¶106 ProAssurance did not state a preference as to which court (i.e., this court or the court of appeals) should resolve the insurance coverage dispute, if the issue was reached at all. To the extent ProAssurance did state a preference as to which court should decide the issue if the issue were revived, ProAssurance admitted that the insurance coverage issue "d[id] not by itself warrant acceptance of the petition for review." Dr. Hamp, ProAssurance's insured, did not address the issue at all in his response to the Paynters' petition.

¶107 It was surprising, then, to see ProAssurance spend a significant portion of its response brief[83] addressing the merits of the insurance coverage issue. The Paynters did not address the merits of the coverage issue in their brief-in-chief. By waiting until its response brief to raise arguments on the merits of the insurance coverage issue, ProAssurance placed the Paynters in the unenviable position of deciding whether to address the merits of the insurance coverage issue in the limited space available in their reply brief.[84]

¶108 More importantly, ProAssurance's actions deprived Dr. Hamp of any opportunity to address the insurance coverage issue

---

[83] Approximately 8 pages of a 20-page argument.

[84] See Wis. Stat. §§ (Rules) 809.19(8)(c)2. & 809.63.

to this court in writing. It is for this reason that arguments raised for the first time in reply briefs are generally not addressed——"[i]t prevents the opposing party from having an adequate opportunity to respond."[85]

¶109 We therefore decline to address the insurance coverage issue. We instruct the court of appeals to resolve this issue on remand in such a fashion that is consistent with this opinion.

VI

¶110 On this issue of first impression, we hold that in medical malpractice cases involving a negligent misdiagnosis that results in a latent, though continuous, injury, whether the action is "foreign" for purposes of Wisconsin's borrowing statute is determined by whether the plaintiff's first injury occurred outside of Wisconsin.

¶111 We disagree with the court of appeals' conclusion that the borrowing statute applies to the Paynters' negligence claim. On the record before the court, Mr. Paynter's place of first injury is beyond ascertainment to any reasonable, non-speculative degree. When the plaintiff's place of first injury is unknowable, as in the instant case, Wisconsin's borrowing statute does not apply.

¶112 However, we agree with the court of appeals that the Paynters' informed consent claim is "foreign" for purposes of

---

[85] A.O. Smith Corp. v. Allstate Ins. Cos., 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

38

Wisconsin's borrowing statute. Accordingly, we apply Michigan's statute of limitations to the Paynters' informed consent claim and conclude that the claim is untimely. Dr. Hamp is entitled to summary judgment as to that claim.

¶113 Finally, we decline to address the Paynters' appeal from the circuit court's order determining that an insurance policy issued to Dr. Hamp by Defendant-Respondent ProAssurance Wisconsin Insurance Company did not provide coverage for the Paynters' claims. Instead, we remand the cause to the court of appeals to resolve the insurance coverage issue in such a fashion that is consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause is remanded to the court of appeals for further proceedings consistent with this opinion.

¶114 ANN WALSH BRADLEY, J. *(Concurring in part, dissenting in part).* I agree with the majority that the borrowing statute[1] does not apply to the Paynters' negligence claim. Majority op., ¶11. Additionally, I agree that the case should be remanded to the court of appeals to address the Paynters' argument that the circuit court erred in its determination that Dr. Hamp's insurance policy did not provide coverage for the Paynters' claims. Id., ¶13.

¶115 I part ways with the majority, however, in its treatment of the Paynters' informed consent claim.[2] In my view, the majority's proffered test is unworkable.

¶116 Instead of applying Wisconsin's statute of limitations to an informed consent claim when the injury is "felt" in Wisconsin, I would turn to the familiar International Shoe test.[3] Applying that test, I determine that the Paynters' informed

---

[1] The borrowing statute, Wis. Stat. § 893.07, provides:

(1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.

(2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

[2] Accordingly, I join the majority opinion with the exception of part IV.B.

[3] See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

1

consent cause of action is not a "foreign cause of action" for purposes of the borrowing statute and therefore can proceed.

¶117 Accordingly, I concur in part and dissent in part.

I

¶118 The alleged violation of Mr. Paynter's right to informed consent occurred during the phone call of June 14, 2010. Majority op., ¶33. During this phone call, Dr. Hamp told Mr. Paynter that the growth on his neck was not cancerous and he did not need any further treatment. Id., ¶17. It is undisputed that Mr. Paynter was located in his Michigan home when he received this phone call. Id., ¶33.

¶119 Analyzing these facts, the majority endeavors to determine whether the informed consent cause of action is "foreign" for purposes of the borrowing statute. In doing so, it relies on an unpublished federal case setting forth the legal test as follows: "the injury occurs where it is felt rather than where it originates . . . ." Id., ¶98 (citing Studio & Partners, s.r.l. v. KI, No. 06-C-628, 2007 WL 3342597, *3 (E.D. Wis. Nov. 7, 2007)).

¶120 Applying this test, the majority determines that the Paynters' informed consent claim is a "foreign cause of action" pursuant to the borrowing statute. Majority op., ¶95. In the majority's view, "[t]o the extent Dr. Hamp violated Mr. Paynter's right to informed consent, that injury was felt in Michigan because Mr. Paynter was in Michigan when Dr. Hamp allegedly informed him that his growth was not malignant and needed no further treatment." Id., ¶99. "Because [Mr. Paynter]

2

was located in Michigan at that time, his alleged injury——i.e., the loss of the opportunity to choose his course of treatment—— occurred in Michigan, not Wisconsin." Id.

¶121 In my view, the majority's proffered test is unworkable. Given the rise of telemedicine, the majority's focus on where the injury is "felt" creates unreasonable and unpredictable results.

¶122 For example, what if a patient gets a call from the doctor while traveling in another country? Does that mean the foreign country's statute of limitations applies? What if the call comes in when the patient is on an airplane? What if medical test results are transmitted electronically? What if the notice that those results have been transmitted is received in one state but the results are first viewed in another?

¶123 Patients and doctors are more mobile than ever before, and technology now allows us to be connected worldwide at all times of the day and night. Rather than tethering the statute of limitations for a patient's informed consent cause of action to the patient's location at the time of the alleged violation, I would use a predictable and familiar guide. Namely, I would answer this question using the test set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

¶124 Thus, I conclude that Wisconsin's statute of limitations applies to a cause of action premised on a violation of a patient's right to informed consent if the defendant has "certain minimum contacts with [Wisconsin] such that the maintenance of the suit does not offend traditional notions of

3

fair play and substantial justice." See id. (citations omitted). This approach provides predictability and workability that the majority's "where the injury is felt" standard lacks.

¶125 Applying the International Shoe test to the facts of this case, I determine that Dr. Hamp had the requisite minimum contacts so as to make Wisconsin's statute of limitations applicable to the informed consent cause of action. As the majority acknowledges, Dr. Hamp is licensed to practice medicine in Wisconsin and maintains an office in Ashland. Majority op., ¶86 n.73 (explaining that "we have no trouble concluding that Dr. Hamp had the requisite 'minimum contacts' with Wisconsin" based on his medical licensure and maintenance of an office within the state).

¶126 Accordingly, I conclude that Wisconsin's statute of limitations applies to the informed consent cause of action in addition to the negligence cause of action. Thus, the Paynters should be able to continue their pursuit of both of these claims.

¶127 For the foregoing reasons, I respectfully concur in part and dissent in part.

4

¶128 REBECCA GRASSL BRADLEY, J. *(concurring in part, dissenting in part).* I agree with the majority that the borrowing statute does not bar the Paynters' negligence claim, but not with the tests the majority adopts for determining whether Wisconsin's borrowing statute applies in medical malpractice cases alleging a negligent failure to diagnose or a violation of a patient's right to informed consent. The tests embraced by the majority lack statutory support and will result in absurdities. Unlike the majority, I would remand the informed consent claim to the circuit court to consider whether the Paynters state a claim upon which relief may be granted.

I

¶129 If a plaintiff brings a foreign cause of action into a Wisconsin court, Wisconsin's borrowing statute, Wis. Stat. § 893.07, commands the application of whichever statute of limitations——Wisconsin's or the foreign state's——is shorter:

> (1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.

> (2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

The purpose of Wisconsin's borrowing statute is to reduce forum shopping, preclude stale claims, encourage expedient litigation, and ensure litigants know whether their claims are timely without having to ask a court to decide. Guertin v. Harbour Assurance Co., 141 Wis. 2d 622, 631-32, 415 N.W.2d 831 (1987).

1

The statute discourages suits arising in other states from being filed in Wisconsin courts when they would be time-barred in the foreign venue. The statute does not define "foreign cause of action."

¶130 The majority says whether a medical malpractice misdiagnosis-of-cancer action is "foreign" for purposes of Wisconsin's borrowing statute is determined "by whether the plaintiff's first injury occurred outside of Wisconsin." Majority op., ¶10. Consequently, if the plaintiff happens to be outside of Wisconsin when the injury caused by the misdiagnosis arises, the case will be considered a foreign cause of action even if the plaintiff resides in Wisconsin and the allegedly negligent physician treated the plaintiff in Wisconsin. The majority derives this test not from the text of the statute but from three cases applying the borrowing statute but having nothing else in common with medical malpractice misdiagnosis-of-cancer cases: (1) Guertin, 141 Wis. 2d 622; (2) Abraham v. General Cas. Co., 217 Wis. 2d 294, 576 N.W.2d 46 (1998); and (3) Faigin v. Doubleday Dell Publ'g Grp., Inc., 98 F.3d 268 (7th Cir. 1996).

¶131 Guertin involved a resident of Wisconsin who was injured during a slip and fall in Illinois. Guertin, 141 Wis. 2d at 624-25. Abraham extended the borrowing statute to contract cases, holding that the action is foreign if the "final significant event giving rise to a suable claim occurs outside" Wisconsin, reasoning that in a contract dispute, "location [in a contract case] is not easily pinned to a particular state."

2

Abraham, 217 Wis. 2d at 305, 311 (quoted source and internal quotation marks omitted). Faigin involved a multi-state defamation action in which the Seventh Circuit held that because some injury occurred in Wisconsin, the cause of action was not foreign. Faigin, 98 F.3d at 272. None of these cases support adopting a place-of-first-injury test for applying the borrowing statute in a medical malpractice misdiagnosis-of-cancer case.

¶132 The typical impossibility of pinpointing when the injury first occurs following a cancer misdiagnosis makes a place-of-first-injury test unworkable. When cancer goes undiagnosed, it is often unfeasible to know the exact moment the patient suffers a "greater harm"[1] than existed at the time of the misdiagnosis. Whether the cancer cells multiplied seconds, minutes, hours, days, or months after the misdiagnosis is generally unknowable. All that can be established is that the injury surfaced sometime between the date of misdiagnosis and the date on which the plaintiff was later diagnosed with cancer. Even if the moment of greater harm could be ascertained to any degree of certainty, the physical location of the patient at that exact moment should not determine whether the patient's case constitutes a foreign cause of action under Wis. Stat. § 893.07. The statutory text does not suggest such a test and logic counsels against it.

---

[1] The majority, citing Paul v. Skemp, 2001 WI 42, ¶25, 242 Wis. 2d 507, 625 N.W.2d 860, correctly notes that in medical malpractice cases involving misdiagnoses, Wisconsin law holds that the test for "actionable injury" is the time "when the misdiagnosis causes a greater harm than existed at the time of misdiagnosis." Majority op., ¶67 & n.55.

3

¶133 For example, if a patient was on vacation in Florida at the time of "first injury," then under the majority's test, the action would be foreign even if the patient was a resident of Wisconsin, all treatment occurred in Wisconsin, and the doctor practiced only in Wisconsin. So too for the patient who is retired and spends half the year in Arizona, was treated only in Wisconsin by a doctor practicing only in Wisconsin, but who was first injured while in Arizona. And for the patient who is a Wisconsin resident, was treated in Wisconsin by a Wisconsin doctor, but is a college student studying abroad when the injury emerges. Under the majority's test, a lifelong Wisconsin resident, treated in Wisconsin by a Wisconsin-licensed physician, would have his medical misdiagnosis case deemed a foreign cause of action just because the date of his first injury coincides with his presence on a cruise ship touring the world. Consider the inconsistency of the borrowing statute's application under the following scenario: a Wisconsin doctor sees two patients in his Wisconsin office on the same day and the doctor fails to diagnose each patient's cancer. Each patient's injury first appears four years after the missed diagnosis. At that time, the first patient is in Wisconsin, so he can seek redress in a Wisconsin court applying the Wisconsin statute of limitations. But the second patient's injury arises while visiting relatives in Michigan so his case would be deemed a foreign cause of action. Limitless scenarios demonstrate the irrationality of the place-of-injury test adopted by the majority in medical malpractice misdiagnosis-of-cancer cases.

4

¶134 Extending a "place-of-first-injury" test to medical malpractice misdiagnoses-of-cancer cases contravenes the judicially-divined purpose of the statute by elevating the physical location of the patient at the moment the misdiagnosis causes "greater harm" above every other element comprising a medical malpractice claim. A Wisconsin patient who treats only with Wisconsin physicians would be barred from pursuing a claim that is timely under the Wisconsin statute of limitations simply because her injury surfaced when she happened to be on vacation in another place with a shorter statute of limitations. Wisconsin residents treated only by Wisconsin doctors but who happen to be beyond Wisconsin's borders when their injuries arise are not forum shoppers. Nevertheless, under the rule the majority adopts, each patient's cause of action will be deemed foreign and subject to the shorter statute of limitations controlled by the physical place each patient happened to be at the moment their injuries materialize. The majority's interpretation of the borrowing statute will thereby deprive Wisconsin residents of the benefit of Wisconsin laws whenever they happen to be outside of Wisconsin at the time their respective injuries surface. A fortuitous event will lead to different statutes of limitation for identically situated patients, depending solely upon the geographic location of each patient when the misdiagnosis causes "greater harm." The rule of law cannot be based upon such happenstance.

¶135 Instead of squeezing medical malpractice misdiagnosis-of-cancer cases into an ill-fitting test designed for immediate,

5

discrete, and visible injuries, the unique nature of misdiagnosis-of-cancer cases demands a different test. In the context of a missed cancer diagnosis, the test could be linked to the easily-ascertainable location of the actual alleged negligent treatment. Alternatively, only when every element of the claim occurred outside of Wisconsin would the cause of action be deemed foreign. Given the fact that Wis. Stat. § "893.07 operates as a legislative choice of law" the test could appropriately employ a choice-of-law analysis. Wenke v. Gehl Co., 2004 WI 103, ¶14, 274 Wis. 2d 220, 682 N.W.2d 405. Nothing in the borrowing statute's text suggests the fluke of wherever a patient happens to be physically located at the moment of first injury as its foundation, no case commands a test based on pure happenstance, and using the place-of-first-injury test in misdiagnosis-of-cancer cases defies common sense and reasonableness.

¶136 The majority asserts the place-of-first-injury test "provides the highest degree of certainty to the party most in need of that certainty, i.e., the plaintiff bringing the action." Majority op., ¶73 n.64. The majority reasons that "plaintiffs are more likely to know where their injury occurred because they are in control of their own movements and actions." Id. This rationale for the majority's test contradicts the majority's conclusion that the borrowing statute does not apply to the Paynters' negligence claim because the moment of Paynter's injury is unknowable. Id., ¶¶74, 83. The majority "can think of no test by which a finder of fact could determine

6

the location of Mr. Paynter's first injury without speculating,"[2] thereby undermining the suitability of the majority's place-of-first-injury test in cancer misdiagnosis cases. The nature of missed cancer diagnosis cases makes detecting the moment the cancer creates a "greater harm" virtually impossible. Consequently, perhaps the borrowing statute is incapable of being applied in any cases involving a misdiagnosis of cancer.[3]

¶137 I agree with the majority that the borrowing statute does not apply to the Paynters' medical malpractice claim and therefore the Paynters' negligence claim is not time-barred. I reject the majority's adoption of a place-of-first-injury test in misdiagnosis-of-cancer cases. The majority "cannot accept the ease with which a negligent misdiagnosis claim could be transformed from a 'foreign' cause of action to a non-foreign one" if the patient entered Wisconsin between the time of the misdiagnosis and the time of its discovery. Majority op., ¶71. The majority's concern applies equally to the ease with which its test results in a Wisconsin resident having her claim transformed into a foreign cause of action based merely on her temporary absence from Wisconsin at the time her injury happens to emerge.

II

---

[2] Majority op., ¶83.

[3] Although the majority notes that the moment of "greater harm" in some misdiagnosis cases may be possible to determine, citing Paul v. Skemp, that case did not involve a cancer misdiagnosis. See majority op., ¶86 n.72.

7

¶138 The majority also errs in basing the application of the borrowing statute to medical malpractice informed consent claims on where the resulting injury was "felt." The majority deems the Paynters' informed consent claim foreign because Paynter "felt" the effect of Dr. Hamp's alleged violation of Paynter's right to informed consent in Michigan where he received a phone call from the doctor, who allegedly told Paynter the pathology report revealed no malignancy. The majority takes this test from an unpublished federal district court case, Studio & Partners, s.r.l. v. KI, No. 06-C-628, 2007 WL 3342597 (E.D. Wis. Nov. 7, 2007), involving a dispute between two feuding businesses over economic losses. The majority's "injury is felt" test makes no more sense than the majority's place-of- first-injury test.

¶139 Besides being an unpublished federal district court case and therefore not binding on this court, Studio & Partners is inapposite. Studio & Partners involved a dispute between KI, a Wisconsin furniture manufacturer/seller, and Studio & Partners, a furniture design company based in Italy, over a chair. Id. at *1. Studio & Partners sued KI in Wisconsin alleging KI misappropriated its chair design, illegally patented the design, and profited $50 million from selling the chairs. Id. at *1-*2. The district court concluded the case constituted a foreign cause of action and applied Italy's statute of limitations because Studio & Partners' injuries were economic losses suffered in Italy, not in Wisconsin. Id. at *3. Under

8

this holding, when the injury is economic, courts look to where the "economic effects were felt." See id.

¶140 An informed consent claim does not involve lost profits. Paynter characterizes his injury as a "loss of the opportunity to choose his course of treatment." Majority op., ¶33. Lost opportunity to choose treatment is not an economic loss and should therefore not be controlled by where the loss is "felt." Using a test based on where an injury is "felt" may make sense for an economic loss, but in the context of medical malpractice informed consent cases it results in the same randomness and suffers from the same irrationality as the place-of-first-injury test in medical misdiagnosis cases.

¶141 Wisconsin Stat. § 448.30 governs informed consent and provides:

> Any physician who treats a patient shall inform the patient about the availability of reasonable alternate medical modes of treatment and about the benefits and risks of these treatments. The reasonable physician standard is the standard for informing a patient under this section. The reasonable physician standard requires disclosure only of information that a reasonable physician in the same or a similar medical specialty would know and disclose under the circumstances. The physician's duty to inform the patient under this section does not require disclosure of:
>
> (2) Detailed technical information that in all probability a patient would not understand.
>
> (3) Risks apparent or known to the patient.
>
> (4) Extremely remote possibilities that might falsely or detrimentally alarm the patient.

9

(5) Information in emergencies where failure to provide treatment would be more harmful to the patient than treatment.

(6) Information in cases where the patient is incapable of consenting.

(7) Information about alternate medical modes of treatment for any condition the physician has not included in his or her diagnosis at the time the physician informs the patient.

Informed consent is unique to the medical field. The injury from a physician's failure to comply with the informed consent statute is not lost profits or other economic loss. The injury is a patient's inability to make an informed treatment choice because the physician failed to fully present all options. Any test for applying the borrowing statute to an informed consent claim must be linked to the treating physician's alleged tortious act. A "feel" test is imponderable.

¶142 The "feel" test in Studio & Partners may be suitable in cases involving economic losses because where the economic losses a business suffers may be objectively measured. "Feel" in the informed consent context cannot. By "feel," the majority really means where Paynter happened to be when he took the phone call from Dr. Hamp. This test produces the same fortuity problem as the majority's place-of-first-injury test for misdiagnosis claims.

¶143 The Defendants-Respondents allege in their Answers to the Paynters' complaint that the Paynters' informed consent claim fails to state a claim upon which relief can be granted. Because the issues presented to this court relate solely to the borrowing statute, none of the parties address whether Paynter

10

can assert an informed consent claim under these facts (namely that Dr. Hamp did not treat him because Dr. Hamp believed there was no malignancy) and the majority does not decide it. Accordingly, I decline to address it further. I would remand this claim to the circuit court to do so.

### III

¶144 Although I agree with the majority's decision to remand the insurance coverage issue to the court of appeals, I disagree with the majority's decision to base this disposition on (1) ProAssurance's decision to brief the merits of coverage despite Dr. Hamp's failure to address the issue in his response to the Paynters' petition for review and (2) ProAssurance's statement in its response to the petition that the insurance coverage issue alone did not warrant this court's review. ProAssurance is the Wisconsin insurer for Dr. Hamp, but Dr. Hamp and ProAssurance have separate counsel because of the insurance coverage dispute.

¶145 The majority expresses "surpris[e]" that ProAssurance spent "a significant portion of its response brief addressing the merits of the insurance coverage issue." Majority op., ¶107 (footnote omitted). The majority suggests that by doing so, ProAssurance prevented the other parties from having an opportunity to respond. The majority's criticism of ProAssurance is unwarranted.

¶146 The circuit court granted summary judgment to ProAssurance on coverage. The operative policy language in ProAssurance's policy provides:

11

> We will neither defend nor pay damage for <u>any liability arising from, relating to, or in any way connected with</u> the rendering or failure to render <u>professional services</u> by James A. Hamp, M.D., at the following location(s): in the State of Michigan and/or <u>outside the State of Wisconsin</u>.

(Emphasis added.) The court of appeals did not address coverage because it disposed of the case on other grounds. The Paynters' petition for review to this court raised the coverage issue solely to preserve it:

> The Paynters also raise an insurance coverage issue not addressed by the appellate court (see <u>Paynter</u>, 2018 WL 1512092, ¶3, n. 3) to preserve this issue. Because the unique policy language in issue does not meet this court's criteria for review, the Paynters request that this issue be remanded to the appellate court upon reinstatement of their cause of action.

¶147 In its response to the Paynters' petition for review, ProAssurance refuted the substance of the Paynters' claims based on Wis. Stat. § 893.07 and asserted "the issue of insurance coverage is moot and does not by itself warrant acceptance of the petition for review."

¶148 In their initial brief, the Paynters do not argue the merits of the coverage issue: "The Paynters have raise[d] the insurance coverage issue to preserve this issue and request that this issue be remanded to the appellate court upon reinstatement of their cause of action." In response, ProAssurance devoted relatively little of its response brief to the merits of the coverage issue.

¶149 It is disingenuous for the majority to ground its decision to remand the coverage determination to the court of appeals on the basis that ProAssurance included an insurance

12

coverage argument in its merits brief to this court despite asserting in its response to the Paynters' petition for review that the coverage issue alone did not warrant granting of the petition. There was no reason for ProAssurance to make a coverage argument at the petition-for-review stage of the proceedings. The Paynters did not argue coverage existed, but simply preserved the issue. ProAssurance, at that point, had a coverage determination in its favor from the circuit court, as well as a favorable court of appeals decision that did not address coverage because the court of appeals disposed of the case under Wis. Stat. § 893.07 and the statute of limitations.

¶150 When this court granted the Paynters' petition for review, however, ProAssurance's counsel had no reasonable choice but to argue the merits of coverage even though the Paynters and Dr. Hamp did not. Insurance coverage is an issue of law, which this court reviews independently. Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co., 2016 WI 54, ¶12, 369 Wis. 2d 607, 881 N.W.2d 285. Although neither the Paynters nor Dr. Hamp argued the merits of coverage, it was among the issues presented in the Paynters' petition this court granted for review. Accordingly, this court could have chosen to decide insurance coverage. A reasonable reading of ProAssurance's brief reveals that it included its insurance coverage argument so that if this court chose to decide the issue, ProAssurance's position was

13

presented. ProAssurance did not ask this court to decide coverage; instead, it asked us to affirm the court of appeals.[4]

¶151 Given the procedural posture of this case, it is proper to remand the insurance coverage decision to the court of appeals, before which the issue can be thoroughly briefed and argued before a decision is rendered. It is unreasonable for the majority to suggest that ProAssurance's presentation of the issue somehow necessitated remand.

¶152 For these reasons, I respectfully concur with the majority in allowing the Paynters' negligence claim to proceed although I do not join its reasoning. I also agree that the insurance coverage issue should be remanded to the court of appeals. I dissent from the majority's application of the borrowing statute to bar the informed consent claim. I would instead remand the issue of whether the Paynters' informed consent claim states a claim upon which relief may be granted.

¶153 I am authorized to state that JUSTICE DANIEL KELLY joins this concurrence/dissent.

---

[4] The majority criticizes an insurer's lawyer for spending eight pages of a 32-page brief arguing against coverage, based on the language of the policy. The only thing "surprising" is the majority's expectation that an insurance coverage lawyer would not make a coverage argument.